COURT OF APPEALS OF VIRGINIA

Present:  Judges Kelsey, Haley and Beales
Argued at Chesapeake, Virginia


GLORIA JEAN ELLIS
                                                        OPINION BY
v.            Record No. 1410-07-1          JUDGE D. ARTHUR KELSEY
                                                        JULY 1, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
William R. O'Brien, Judge

Aleasa D. Leonard, Assistant Public Defender (Office of the
Public Defender, on brief), for appellant.

J. Robert Bryden, III, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


In the trial court, Gloria Jean Ellis entered a conditional guilty plea to a charge of

possession of cocaine.  On appeal, Ellis argues the trial court erroneously failed to suppress the

evidence of cocaine found on her person during a traffic stop.  We disagree with Ellis and affirm

her conviction.

I.

We address legal issues arising from a suppression motion "only after the relevant

historical facts have been established."  Raab v. Commonwealth, 50 Va. App. 577, 579, 652

S.E.2d 144, 146 (2007) (en banc) (citation omitted).  On appeal, the facts developed in the trial

court must be reviewed "in the light most favorable to the Commonwealth, giving it the benefit

of any reasonable inferences."  Glenn v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282,

283 (2007) (en banc) (citation omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008).

Viewed from that perspective, the evidence showed that a police officer observed a

pickup truck with an inoperative brake light.  He stopped the vehicle at 6:19 p.m.  The officer got

out of his vehicle and walked up to Ellis, the driver, to ask for her license and to inform her of the inoperative brake light. Intending to issue Ellis a summons, the officer returned to his vehicle and conducted the routine process of identifying Ellis on the computer databases maintained by the Virginia Division of Motor Vehicles (DMV) and the National Crime Information Center (NCIC). From the initial stop to the point when the officer returned to his vehicle took about a minute and a half.

While he waited for the computer results, the officer recalled that Ellis and her passenger had a "previous narcotics history." Specifically, the officer remembered seeing Ellis at a house searched for narcotics pursuant to a warrant a week earlier. After about another minute and a half, the officer then walked back to Ellis's vehicle and asked her if she would consent to a search of her vehicle. She said no. The officer asked, "Do I have to get a drug dog?" She answered, "go ahead and get the drug dog." This conversation took about a minute.

On his way back to his vehicle, the officer called for a canine narcotics unit to assist him. He then got back into his vehicle to complete the process of filling out the necessary paperwork to issue the summons for the equipment violation. The officer had just finished the first line of the summons when his partner alerted him to "a bunch of movement in the car." The officer left his vehicle and again spoke with Ellis, advising her and her companion to "calm down" and stop the commotion. During this conversation, the canine narcotics unit arrived. About five minutes elapsed between the officer's call for a canine narcotics unit and its arrival on the scene. During this five-minute period, the officer testified he was preparing the paperwork necessary to issue the summons and had not turned his attention to investigating "suspected narcotics activity."

After two minutes on the scene, the "drug dog" — a dog specially trained to detect the smell of illegal narcotics — alerted multiple times to the presence of drugs in Ellis's vehicle. The officers asked Ellis if she would consent to a search of her person. She agreed so long as a

female officer conducted the search. A female officer already on the scene searched Ellis and discovered cocaine.

Before trial, Ellis moved to suppress the cocaine evidence claiming that her consent to search was tainted by an unreasonably long detention. The trial court denied the motion, ruling that the officer was "attempting to complete the defendant's citation during the length of the encounter" and the detention "was not unreasonably long, so as to violate the defendant's Fourth Amendment rights." In response, Ellis entered a conditional guilty plea and appealed the denial of the suppression ruling.

## II.

On appeal, Ellis does not argue that her consent was involuntary or in any way coerced. Nor does she contest the officer's authority to detain her for purposes of issuing an equipment summons. Ellis also accepts that, when a traffic stop is "lawful at its inception and otherwise executed in a reasonable manner," a dog sniff conducted during the stop does not infringe on a constitutionally protected privacy interest. Illinois v. Caballes, 543 U.S. 405, 408 (2005). The suppression motion should have nonetheless been granted, Ellis argues, because the officer "abandoned his original purpose for the traffic stop and began a narcotics investigation without reasonable suspicion," resulting in an unlawfully delayed detention. Appellant's Br. at 2.[1]

As Ellis concedes on appeal, however, the only period of delay attributable to the drug issue was the one-minute conversation the officer had with Ellis after he remembered seeing her about a week earlier at a home searched for narcotics. All other time segments ─ the initial

---

[1] Ellis also argued in the trial court that the search violated the rule established in Moore v. Commonwealth, 272 Va. 717, 636 S.E.2d 395 (2006) (holding the federal exclusionary rule applied to violations of state arrest law). The United States Supreme Court, however, recently reversed Moore in Virginia v. Moore, 128 S. Ct. 1598, 1608 (2008) (holding that "the arrest rules that the officers violated were those of state law alone, and as we have just concluded, it is not the province of the Fourth Amendment to enforce state law," and thus, the Fourth Amendment "does not require the exclusion of evidence obtained from a constitutionally permissible arrest").

conversation immediately after the stop, the time the officer sat in his vehicle obtaining and reviewing the DMV and NCIC information, the time it took for the officer to return to Ellis's vehicle to ask that she and her passenger stop their unnerving movements, and the five minutes the officer spent in the vehicle working on the paperwork for the equipment summons ─ solely related to the detention justifiably required for the traffic stop and issuance of the citation.[2]

Equally important is that the consent search took place prior to the issuance of any summons. As the trial court found, the officer had not completed the summons when the drug dog alerted and Ellis agreed to be searched. Ellis does not argue on appeal (and did not argue in the trial court) that the officer deliberately stalled the process as a subterfuge for conducting a drug investigation. Nor does Ellis contest the officer's statement that he worked on the paperwork for the equipment citation the entire five minutes it took for the drug dog to arrive.

Thus, this is not a case where a constitutional justification *never* existed for the stop, see, e.g., Davis v. Commonwealth, 37 Va. App. 421, 433-35, 559 S.E.2d 374, 379-80 (2002), or where the justification existed initially for the stop but expired *prior* to the consent search, cf. Reittinger v. Commonwealth, 260 Va. 232, 532 S.E.2d 25 (2000), with Malbrough v. Commonwealth, 275 Va. 163, 655 S.E.2d 1 (2008) (distinguishing Reittinger). Instead, this case presents a situation where the justification for the stop (a vehicle equipment violation) existed from the beginning of the stop up until the moment of consent ─ the only constitutional wrinkle being a one-minute interval where the officer asked questions unrelated to the justification. The question we must answer is whether such a *de minimis* delay, caused by questioning unrelated to the specific reason for the detention, invalidates a later, voluntary consent to search.

---

[2] At oral argument, Ellis's counsel several times acknowledged that the delay attributable to the officer's narcotics questions lasted no longer than one minute. See Oral Argument at 1:53, 2:21, 2:34, 4:21, 8:03 (Apr. 8, 2008). At one point, counsel stated: "Realistically, it's probably a minute — if it's a full minute." Id. at 8:03.

Our analysis begins with the general rule that "a search authorized by consent is wholly valid." Kyer v. Commonwealth, 45 Va. App. 473, 483, 612 S.E.2d 213, 218 (2005) (*en banc*) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973)). "Consent loses its validity only if it is involuntary, Ohio v. Robinette, 519 U.S. 33, 40 (1996), or the product of a manipulative 'exploitation' by the police of an earlier unconstitutional search or seizure. Wong Sun v. United States, 371 U.S. 471, 488 (1963); Warlick v. Commonwealth, 215 Va. 263, 266, 208 S.E.2d 746, 748 (1974)." Kyer, 45 Va. App. at 483, 612 S.E.2d at 218 (full internal citations added). Absent a showing of involuntariness or exploitive, unconstitutional conduct, a criminal defendant has no basis to suppress evidence found during a consent search. Id.

Governed by these principles, we hold the officer's one-minute conversation about drugs cannot be characterized as an exploitive, unconstitutional act. As many courts have held, "where a seizure of a person is based on probable cause to believe that a traffic violation was committed, an officer does not violate the Fourth Amendment by asking a few questions about matters unrelated to the traffic violation, even if this conversation briefly extends the length of the detention." United States v. Olivera-Mendez, 484 F.3d 505, 510 (8th Cir. 2007) (citing United States v. Alcaraz-Arellano, 441 F.3d 1252, 1259 (10th Cir. 2006); United States v. Burton, 334 F.3d 514, 518-19 (6th Cir. 2003); United States v. Childs, 277 F.3d 947, 951-54 (7th Cir. 2002) (*en banc*)). The reason why turns, in part, on the nature of the stop:

> The rationale for this conclusion was stated most thoroughly by the *en banc* Seventh Circuit, which reasoned that in contrast to the constraints applicable to a stop based merely on reasonable suspicion, see Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), the Fourth Amendment does not require the release of a person seized with probable cause "at the earliest moment that step can be accomplished," and that "[q]uestions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention." Childs, 277 F.3d at 953-54. See Berkemer v. McCarty, 468 U.S. 420, 439 n.29, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984) ("We of course do not suggest that a traffic stop supported by probable cause may not

exceed the bounds set by the Fourth Amendment on the scope of a <u>Terry</u> stop.").

<u>Olivera-Mendez</u>, 484 F.3d at 510-11; <u>see</u> <u>also</u> <u>United States v. Turvin</u>, 517 F.3d 1097, 1103-04 (9th Cir. 2008). Consequently, a police officer with "probable cause" to detain a suspect for the issuance of a traffic summons does not convert the lawful encounter into an unreasonably long, unlawful seizure simply by asking a few brief questions "related to possible drug trafficking amidst his other traffic-related inquiries and tasks." <u>Olivera-Mendez</u>, 484 F.3d at 511.[3]

In our case, Ellis consented to a search while being detained by an officer having probable cause to issue her a citation for a malfunctioning brake light. The drug dog's multiple alerts and Ellis's subsequent consent took place before the officer completed the paperwork necessary for issuing a summons for the equipment violation. The brief, incremental delay caused by the officer's questions regarding drugs did not violate the Fourth Amendment and, *a fortiori*, did not constitute an exploitive basis for securing Ellis's consent. <u>See</u> <u>Turvin</u>, 517 F.3d at 1103-04; <u>United States v. Brigham</u>, 382 F.3d 500 (5th Cir. 2004) (*en banc*).

## III.

Finding no error in the trial court's reasoning or result, we reject Ellis's challenge to the court's suppression ruling and affirm her conviction based upon her conditional guilty plea.

Affirmed.

---

[3] <u>See</u> <u>also</u> <u>United States v. Alexander</u>, 448 F.3d 1014, 1015-16 (8th Cir. 2006); <u>State v. Teagle</u>, 170 P. 3d 266, 272 (Ariz. Ct. App. 2007); <u>State v. Griffin</u>, 949 So. 2d 309, 314-15 (Fla. Ct. App. 2007); 27 <u>Moore's Federal Practice — Criminal Procedure</u> § 641.103[2], at 641-219 to 641-220 (3d ed. 2008).