COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Frank and Huff
Argued by teleconference

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.      Record No. 1113-12-2                                 JUDGE GLEN A. HUFF
                                                            NOVEMBER 15, 2012

DENISE STACY-ANN CROOKS


FROM THE CIRCUIT COURT OF BRUNSWICK COUNTY
W. Allan Sharrett, Judge

Steven A. Witmer, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellant.

John H. Click, Jr. (Benjamin R. Rand; Blackburn, Conte, Schilling &
Click, P.C., on brief), for appellee.


Pursuant to Code § 19.2-398(A)(2), the Commonwealth appeals the Circuit Court of

Brunswick County's ("trial court") pretrial order granting Denise Stacy-Ann Crooks's

("appellee") motion to suppress the evidence seized from her vehicle.  On appeal, the

Commonwealth argues that the trial court erred 1) in finding that appellee was "seized" when

questioned by Sergeant Cedric Macklin ("Macklin"), with the Brunswick County Sheriff's

Department, and that a reasonable person would not have felt free to leave or to disregard

Macklin's questions, and 2) in finding that appellee's consent to search was illegally obtained

and not voluntary.[1]  For the following reasons, this Court affirms the trial court's determination.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Commonwealth also argues on appeal that even if a Fourth Amendment violation
occurred, the trial court erred in finding the evidence was the "fruit of an illegal seizure . . . [and]
must therefore be suppressed."  As the Commonwealth conceded at oral argument, the trial court
did not rule on its motion to reconsider that it filed on this basis, and therefore this issue is not
preserved for appeal.  Rule 5A:18.  Thus, "there is no ruling for us to review," Fisher v.

## I.  BACKGROUND

"Upon appeal from a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the prevailing party, in this instance appellee, granting to [her] all reasonable inferences fairly deducible from the evidence."  Commonwealth v. Spencer, 21 Va. App. 156, 159, 462 S.E.2d 899, 901 (1995) (citing Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)).  "On appeal, we consider the entire record in determining whether the trial court properly [ruled on] [appellee]'s motion to suppress." Patterson v. Commonwealth, 17 Va. App. 644, 648, 440 S.E.2d 412, 415 (1994) (citing DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 543 (1987)).  So viewed, the evidence is as follows.

Around 1:00 a.m. on September 3, 2011, Macklin stopped appellee, who was driving northbound on Interstate 85, for speeding 83 miles per hour in a posted 70 miles-per-hour zone. Macklin was driving a police vehicle and was wearing a uniform, displaying his badge of authority, and carrying his service weapon in a holster at his side.  Another uniformed, off-duty deputy was riding along with Macklin and stood behind the passenger side of appellee's car during the traffic stop.  The emergency equipment on the police vehicle was activated during Macklin's exchange with appellee, and traffic was light at that time of the morning.

When Macklin initially activated his emergency lights, appellee pulled over to the side of the road and stopped her car while keeping the motor running.  Macklin approached appellee's window and noticed three children in the back seat, one of whom was improperly restrained, and three cellular telephones in the console next to the driver's seat.  Macklin explained to appellee that he had pulled her over for speeding and asked appellee for her driver's license and

_____

Commonwealth, 16 Va. App. 447, 454, 431 S.E.2d 886, 890 (1993) (citations omitted), and the Commonwealth waived this argument under Rule 5A:18.

registration. Appellee gave Macklin her Georgia driver's license and a rental agreement since she had rented the vehicle. Macklin then asked her where she was going. Appellee initially responded that she was traveling to Chesterfield where she lived, but later admitted that she actually lived in Georgia.

Macklin then went back to his vehicle to check the validity of appellee's driver's license, leaving appellee in her vehicle with it still running. Macklin returned to appellee's vehicle after finding that appellee's driver's license was valid, handed appellee her driver's license and rental agreement, and explained that he was only going to give her a warning while advising her to slow down. After appellee agreed to drive slower, Macklin thanked her.

While still standing at appellee's driver side window, Macklin asked appellee, "[o]h, by the way, do you mind if I ask you a question?"[2] Appellee replied that he could. Macklin then proceeded to explain that there was a problem on Interstate 85 with drug trafficking and weapons and asked appellee if she had anything illegal in her vehicle. Appellee answered that she did not. Macklin then asked appellee if he could search her vehicle, to which appellee responded, "Yes, sure you can." Macklin subsequently searched the vehicle and found two large brown boxes in the trunk, each containing a large quantity of marijuana. During the exchange between Macklin

---

[2] At the preliminary hearing, Macklin testified that he remained at the front driver side window when he began questioning appellee again. Macklin, however, testified at the suppression hearing that he turned, walked back towards his car, and had almost reached the back of appellee's vehicle when he pivoted and began questioning appellee again. In its memorandum opinion, the trial court noted that Macklin's two statements were irreconcilable, and adopted the most restrictive version – that Macklin did not walk away but rather remained at the front driver side window when he began questioning appellee again.

Based on this finding of fact, the Commonwealth's reliance on Macklin's testimony that appellee had her head positioned as if she was looking back to check traffic after he walked away and before he began questioning her again is misplaced. The trial court found that Macklin remained at appellee's window. See Bay v. Commonwealth, 60 Va. App. 520, 535, 729 S.E.2d 768, 775 (2012) ("[C]onflicts in evidence present factual questions, to be resolved by the trial court." (citing Mills v. Commonwealth, 14 Va. App. 459, 468, 418 S.E.2d 718, 723 (1992))). Thus, viewing the evidence in the light most favorable to appellee, the trial court did not find that appellee was preparing to drive away since Macklin never left her driver's side window.

and appellee regarding drugs and the subsequent search, the other off-duty officer had returned to the police vehicle and did not participate in the search.

On October 27, 2011, appellee filed a motion to suppress any and all evidence seized as a result of the stop, seizure, search, or interrogation of appellee on September 3, 2011. Appellee filed a brief in support of her motion to suppress on March 8, 2012, and the Commonwealth filed a response on or about March 15, 2012. The trial court then held a hearing on appellee's motion to suppress on May 4, 2012, and indicated at the conclusion of the hearing that it would issue its ruling before August 2012.

On June 6, 2012, the trial court issued its ruling by memorandum, and found that appellee was seized when Macklin began questioning her while standing "immediately adjacent" to the front driver's side window. The trial court further found that "[a] reasonable person in [appellee's] position would not have felt free to leave or disregard the [d]eputy's questions under such circumstances." Specifically, the trial court found "it difficult to conclude that the average citizen, after being first told 'thank you' only to be immediately questioned about contraband, followed by a request to search the citizen's car, would feel free to refuse the request or to leave the scene." Based on its finding that appellee's consent for Macklin to search the vehicle was the product of an illegal seizure, the trial court found that the consent was invalid and suppressed the evidence of marijuana as the fruit of an illegal seizure.

On June 15, 2012, the trial court entered the order granting appellee's motion to suppress the evidence pursuant to the June 6, 2012 memorandum. The Commonwealth subsequently filed a motion to reconsider on June 20, 2012 on the basis that the trial court erred in applying the fruit of the poisonous tree doctrine and excluding the evidence seized. The Commonwealth also filed its notice of appeal on June 20, 2012. The trial court, however, never ruled on the motion to reconsider. This appeal followed.

## II.  STANDARD OF REVIEW

A question of whether "'evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo on appeal.'"  Brooks v. Commonwealth, 282 Va. 90, 94, 712 S.E.2d 464, 466 (2011) (quoting Jones v. Commonwealth, 277 Va. 171, 177, 670 S.E.2d 727, 731 (2009)).  "'In making such a determination, we give deference to the factual findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment.'"  Id. (quoting Jones, 277 Va. at 177, 670 S.E.2d at 731).

## III.  ANALYSIS

On appeal, the Commonwealth argues that the trial court erred 1) in finding that appellee was "seized" when questioned by Macklin and that a reasonable person would not have felt free to leave or to disregard Macklin's questions, and 2) in finding that appellee's consent to search was illegally obtained and not voluntary.

On appeal, the Commonwealth does not contend that Macklin had probable cause or even reasonable, articulable suspicion to search the vehicle, and the legality of the initial traffic stop is not at issue.  Therefore, the focus in this appeal is on whether appellee was illegally seized, as the trial court held and appellee asserts, when Macklin continued to question appellee after he returned her documentation and when she gave consent to search the vehicle, or whether it was a voluntary encounter as the Commonwealth argues.

"The Fourth Amendment . . . protects '[the] right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'"  Johnson v. Commonwealth, 26 Va. App. 674, 682, 496 S.E.2d 143, 147 (1998) (second alteration in original) (quoting U.S. Const. amend IV).  "Police-citizen confrontations generally fall into one of three categories.  First, there are consensual encounters which do not implicate the Fourth

Amendment." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (en banc) (internal citations omitted) (citing Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 869-70 (1992); Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988)). "Next, there are brief investigatory stops, commonly referred to as 'Terry' stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot." Id. (citing United States v. Sokolow, 490 U.S. 1, 7 (1939)). "Finally, there are 'highly intrusive, full-scale arrests' or searches which must be based upon probable cause to believe that a crime has been committed by the suspect." Id. (citing Sokolow, 490 U.S. at 7).

> "There is no 'litmus test' for determining whether an encounter is consensual or constitutes an illegal seizure. If, however, a reasonable person would not feel free to decline an officer's requests or would not feel free to leave, the encounter is not consensual and constitutes an illegal seizure under the Fourth Amendment."

Bandy v. Commonwealth, 52 Va. App. 510, 516, 664 S.E.2d 519, 522 (2008) (quoting Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003)).

### A. Seizure

The Commonwealth first argues that the trial court erred in finding that appellee was "seized" when questioned by Macklin and that a reasonable person would not have felt free to leave or to disregard Macklin's questions. Specifically, the Commonwealth contends that the temporary seizure of appellee based on the lawful Terry stop terminated when Macklin returned appellee's identification documents while simultaneously giving her a warning and that everything thereafter was a voluntary encounter. Thus, the Commonwealth argues that Macklin's request for appellee's consent to search the vehicle did not constitute a seizure.

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, 'by means of physical force or show of authority,' terminates or restrains his freedom of movement, '*through means intentionally*

- 6 -

*applied*.'" Brendlin v. California, 551 U.S. 249, 254 (2007) (emphasis in original) (citations

omitted). In determining whether a seizure has occurred,

> [v]arious factors have been identified as relevant . . . , including the
> threatening presence of a number of police officers, the display of
> weapons by officers, physical contact between an officer and a
> citizen, an officer's language or tone of voice compelling
> compliance, the retention of documents requested by an officer,
> and whether a citizen was told that he or she was free to leave.

Harris, 266 Va. at 32, 581 S.E.2d at 209. "The decision whether the encounter was consensual

must be made based on the totality of the circumstances." Id. (citing United States v.

Mendenhall, 446 U.S. 544, 554 (1980)); see id. at 33, 581 S.E.2d at 210 (noting that "the failure

[of the officer] to affirmatively inform [defendant] that he was free to leave does not by itself

require a finding that the ensuing encounter was non-consensual" (citing Ohio v. Robinette, 519

U.S. 33, 39-40 (1996))).

Furthermore, the United States Supreme Court has explained that,

> [a] lawful roadside stop begins when a vehicle is pulled over for
> investigation of a traffic violation. The temporary seizure of driver
> and passengers ordinarily continues, and remains reasonable, for
> the duration of the stop. Normally, the stop ends when the police
> have no further need to control the scene, and inform the driver
> and passengers they are free to leave. An officer's inquiries into
> matters unrelated to the justification of the traffic stop . . . do not
> convert the encounter into something other than a lawful seizure,
> so long as those inquires do not measurably extend the duration of
> the stop.

Arizona v. Johnson, 555 U.S. 323, 333 (2009). In Ellis v. Commonwealth, 52 Va. App. 220,

227, 662 S.E.2d 640, 643 (2008) (quoting United States v. Olivera-Mendez, 484 F.3d 505, 511

(8th Cir. 2007)), this Court held that, "a police officer with 'probable cause' to detain a suspect

for the issuance of a traffic summons does not convert the lawful encounter into an unreasonably

long, unlawful seizure simply by asking a few brief questions 'related to possible drug

trafficking amidst his other traffic-related inquires and tasks.'"

- 7 -

However, "[o]nce a person's freedom of movement is restricted through a seizure under color of law, the degree of police conduct necessary to maintain the seizure is less than was required to initiate it." Watson v. Commonwealth, 19 Va. App. 659, 663, 454 S.E.2d 358, 361 (1995). "Even when . . . a physical restraint of freedom is removed, the mere presence of police, insufficient in itself to create a seizure, is sufficient to continue a seizure absent some affirmative act which explicitly informs the detainee that he or she is free to leave." Id. at 663-64, 454 S.E.2d at 361.

A consensual encounter is not a seizure, and thus does not implicate the Fourth Amendment, provided "'a reasonable person would understand that he or she could refuse to cooperate.'" Payne, 14 Va. App. at 88, 414 S.E.2d at 870 (quoting United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991)). "'The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and voluntariness is a question of fact to be determined from all the circumstances.'" Bay v. Commonwealth, 60 Va. App. 520, 535, 729 S.E.2d 768, 775 (2012) (quoting Robinette, 519 U.S. at 40).

In Harris, a case similar to this one, the Supreme Court reversed this Court and held that Harris's motion to suppress should have been granted. 266 Va. at 34, 581 S.E.2d at 210-11. In Harris, the police officer stopped Harris based on a broken license plate light. Id. at 30, 581 S.E.2d at 208. The officer told Harris to get out of his vehicle and asked him for his driver's license and registration. Id. Harris, however, produced his social security card instead, so the officer asked him some questions to confirm his identity and verified over the radio that Harris had a valid driver's license. Id. The officer then returned the social security card to Harris without charging him with a traffic offense. Id. at 30-31, 581 S.E.2d at 208. The officer, however, continued to ask Harris if there was anything illegal in his truck or on his person. Id. at 31, 581 S.E.2d at 208. Even though Harris replied that he had nothing illegal, the officer

proceeded to ask Harris if he could search his vehicle. Id. Harris consented to the search, and the officer found several stolen items during the search. Id. At the trial, the officer testified that Harris was free to leave even though he did not tell Harris that he was free to do so and that he did not suspect Harris of any criminal activity when he asked Harris for consent to search the truck. Id.

The Supreme Court held that the traffic stop concluded when the officer returned the social security card to Harris and that the ensuing encounter between the officer and Harris was not consensual based on the totality of the circumstances. Id. at 33, 581 S.E.2d at 210. The Supreme Court held that the encounter was not consensual because a reasonable person would not have known he was free to leave when the officer did not inform him that he was free to do so or that he was not going to be charged with a traffic violation and when he was in the presence of two armed, uniformed police officers and two patrol vehicles with their flashing lights activated. Id. at 33, 581 S.E.2d at 210. The Supreme Court then held that Harris's subsequent consent, the officer's search, and the evidence recovered were the products of an illegal detention since Harris was not free to leave or disregard the officer's inquiry; thus, the evidence should have been suppressed as the "fruit" of an illegal seizure. Id. at 34, 581 S.E.2d at 210-11.

In Ellis, this Court upheld the trial court's denial of Ellis's motion to suppress because Ellis consented to the search during the officer's detention of her based on probable cause. 52 Va. App. at 228, 662 S.E.2d at 644. In Ellis, the police officer initiated a traffic stop of Ellis due to an inoperative brake light on her pickup truck. Id. at 223, 662 S.E.2d at 641. After obtaining Ellis's driver's license and informing her of the reason for the stop, the officer returned to his vehicle to verify her information on the computer databases. Id. While waiting for the verification, the officer recalled that Ellis had a previous narcotics history, so he returned to Ellis's vehicle and asked Ellis if she would consent to a search of her vehicle. Id. Ellis told him

no, and the officer then asked if he needed to get a drug dog. After Ellis told him to go ahead and get the drug dog, the officer called for a canine narcotics unit as he walked back to his police vehicle to complete the summons paperwork for the underlying stop. Id. The canine narcotics unit arrived shortly after being called, and the dog alerted to the presence of drugs in Ellis's vehicle. The officer again asked Ellis if she would consent to a search of her person, and Ellis consented. The officer discovered cocaine on her person. Id. at 224, 662 S.E.2d at 642.

On appeal, this Court held that the brief delay caused by the drug dog and the officer's questions "did not constitute an exploitive basis for securing Ellis's consent" as Ellis consented to the search while being detained by the officer having probable cause and before the paperwork necessary for the summons had been completed. Id. at 228, 662 S.E.2d at 644. In addressing the merits, this Court also noted that "this is not a case where a constitutional justification *never* existed for the stop, or where the justification existed initially for the stop but expired *prior* to the consent search." Id. at 226, 662 S.E.2d at 643 (emphasis in original) (internal citations omitted).

In this case, Macklin informed appellee that she had been pulled over for speeding and asked her for her identification. Appellee gave Macklin her documentation, and Macklin returned to his police vehicle to verify the documents. Unlike in Ellis where the police officer was still in the midst of other traffic-related inquires and tasks that were related to the initial traffic stop when he continued questioning Ellis, Macklin had already given appellee her documentation back and had informed her that he was only going to give her a warning while advising her to slow down *before* he continued questioning her. Appellee responded that she would slow down after which Macklin thanked her. Similar to Harris, the traffic stop concluded when Macklin returned the documentation to appellee even though Macklin did not tell appellee she was free to leave, and Macklin's detention of appellee that had been supported by probable

cause ended. Therefore, the ensuing encounter between Macklin and appellee needed to proceed on a consensual basis in order for it to be lawful.

We agree with the trial court that the continued encounter was not consensual. When Macklin questioned appellee about possession of illegal drugs, Macklin had not informed appellee that she was free to leave nor would a reasonable person have felt free to leave since the circumstances did not change from when Macklin originally had seized her based on probable cause for the traffic stop. Macklin remained at the vehicle window while in his police uniform with his holstered weapon in full view on his hip, informed appellee of the drug trafficking problem on Interstate 85, and asked her if she had any illegal drugs and if he could search her vehicle. All of this occurred while the police vehicle emergency lights were still activated and another officer was still at the scene. Macklin's continued stance at appellee's window did nothing to indicate that appellee was free to leave.

Under these circumstances, a reasonable person would not have felt free to disregard the officer's question nor would they have felt free to leave. Therefore, the encounter was not consensual when Macklin began questioning appellee about illegal drugs after the initial stop was completed, and appellee was seized for purposes of the Fourth Amendment. Since Macklin lacked reasonable suspicion that appellee was engaged in criminal activity at that time, appellee's seizure violated her Fourth Amendment rights.

## B. Consent

The Commonwealth next asserts that the trial court erred in finding that appellee's consent to search was illegally obtained and not voluntary. Specifically, the Commonwealth argues that appellee voluntarily consented to the search, and further, that the trial court did not consider the relevant factors in determining whether appellee's consent was voluntary.

As noted above, "'[t]he Fourth Amendment test for a valid consent to search is that the consent be voluntary, and voluntariness is a question of fact to be determined from all the circumstances.'" Bay, 60 Va. App. at 535, 729 S.E.2d at 775 (quoting Robinette, 519 U.S. at 40). "'Consent loses its validity only if it is involuntary, or [is] the product of a manipulative 'exploitation' by the police of an earlier unconstitutional search or seizure.'" Ellis, 52 Va. App. at 226, 662 S.E.2d at 643 (internal citations omitted) (quoting Kyer v. Commonwealth, 45 Va. App. 473, 483, 612 S.E.2d 213, 218 (2005)). Thus, "'statements given during a period of illegal detention are inadmissible even though voluntarily given if they are the product of the illegal detention and not the result of an independent act of free will.'" Harris, 266 Va. at 34, 581 S.E.2d at 210 (quoting Florida v. Royer, 460 U.S. 491, 501 (1983)). Accordingly, "[a]bsent a showing of involuntariness or exploitive, unconstitutional conduct, a criminal defendant has no basis to suppress evidence found during a consent search." Ellis, 52 Va. App. at 226, 662 S.E.2d at 643 (citation omitted).

In this case, appellee's consent to search the vehicle occurred while appellee was illegally detained and under circumstances in which appellee was not free to leave or disregard Macklin's inquiries. At the time of the encounter, appellee was stopped in a rural area in the nighttime, the police emergency lights were activated the entire time, and traffic was light. Appellee was the only adult in her vehicle while there were two police officers present at the scene. After the purpose of the initial stop was completed, Macklin, in his uniform and with his weapon displayed, requested to search the vehicle while he remained at appellee's driver's side window. Macklin made this request only after he had informed appellee of illegal drug trafficking in the area and had asked her if she had anything illegal in the vehicle.

Furthermore, the record in this case does not indicate that the evidence was obtained by the officer pursuant to an independent act of free will by appellee. As the Commonwealth has

- 12 -

failed to meet its burden of establishing that appellee's consent was not "'obtained by exploitation of the illegal action,'" we hold that the trial court did not err in finding that the consent, search, and evidence seized were the product of an illegal detention and thus were illegally obtained.  Harris, 266 Va. at 34, 581 S.E.2d at 210 (quoting Hart v. Commonwealth, 221 Va. 283, 288, 269 S.E.2d 806, 809 (1980)).  Finding no error, we affirm the trial court's order granting the motion to suppress.

Affirmed.