# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Decker, AtLee and Malveaux
Argued at Richmond, Virginia


WILBUR MAURICE WATTS

                                  MEMORANDUM OPINION[*] BY

v.      Record No. 0117-16-2            JUDGE MARLA GRAFF DECKER
                                    DECEMBER 20, 2016

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Steven C. McCallum, Judge

Alexander L. Taylor, Jr., for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


     Wilbur Maurice Watts was convicted of possession of a firearm after having been convicted

of a felony in violation of Code § 18.2-308.2. On appeal, he contends that the detention that led to

the search of his vehicle and discovery of a firearm was unreasonable under the Fourth Amendment

of the United States Constitution and, consequently, that the circuit court should have granted his

motion to suppress evidence. We hold that the circuit court did not err in denying the motion to

suppress. Accordingly, we affirm the conviction.

---

     [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

Shortly before 5:00 p.m. on June 9, 2014, Officer Cory Arrington, of the Chesterfield County Police Department, was on patrol in a high crime area. Arrington was a member of a special team within the department that focused on "the worst areas of Chesterfield, dealing with drugs, guns, [and] prostitution." While on patrol, Arrington saw a sport utility vehicle (SUV) being driven erratically, intermittently changing speed and weaving from lane to lane without signaling. Additionally, Officer Arrington could see that the SUV's front windshield had two large cracks in it. As the officer followed, the driver of the SUV switched lanes and turned "abruptly" into a parking lot without signaling.

Officer Arrington initiated a traffic stop of the SUV in the parking lot. He interacted with the appellant, the vehicle's only occupant, through the driver's side window, identifying himself and telling the appellant that he had stopped him for multiple traffic violations. Arrington asked the appellant for his driver's license and vehicle registration, which the appellant provided. The officer then walked around to the front of the SUV to inspect the cracked windshield and check for a valid inspection sticker. According to Arrington, he was investigating the appellant for traffic offenses at that time. After inspecting the windshield, the officer went to the open passenger side window of the vehicle to explain to the appellant what he was doing regarding the traffic offenses. From that angle on the passenger side, Officer Arrington could see the cup holders in the vehicle's center console, and he noticed the top of a clear cellophane wrapper of the type "familiar" to cigarette smokers protruding from one of them. Based on his training and experience, Arrington knew that cellophane wrappers are "commonly used" for packaging

---

[1] In ruling on the propriety of a trial court's decision on a motion to suppress, the appellate court must consider the evidence introduced at the suppression hearing and at trial. See, e.g., Beasley v. Commonwealth, 60 Va. App. 381, 385 n.1, 728 S.E.2d 499, 501 n.1 (2012). The Court views that evidence in the light most favorable to the party who prevailed below, in this case the Commonwealth. E.g., id.

marijuana and cocaine. As a result, he asked the appellant, "What's in the bag?" The appellant, without being asked to do so, lifted the bag, providing the officer with a clear view of its contents. Officer Arrington saw green plant material in the bag that he concluded was "obvious[ly]" marijuana. The appellant admitted that the substance was marijuana and that it belonged to him.

Officer Arrington then searched the vehicle and found a loaded handgun, which the appellant also admitted belonged to him.

Arrington charged the appellant with making a turn without signaling. The appellant was later indicted for possession of a firearm by a convicted felon. Prior to the appellant's trial for the firearm offense, he filed a motion to suppress the evidence, contending that the seizure and search that yielded the marijuana and gun were unreasonable. The Commonwealth presented testimony from Officer Arrington that was consistent with the events described above. The appellant offered testimony from an alleged bystander. Also, the appellant, who was a convicted felon, testified in his own behalf. The appellant's position based on his and the bystander's testimony was that the officer asked the appellant repeatedly "[w]hat was in the bag." The appellant also claimed he turned over the bag only after the officer said, "[Y]ou're going to jail anyway."

The appellant conceded that the initial stop was lawful but moved to suppress the evidence based on the officer's actions thereafter. He argued in part that the evidence proved the officer repeatedly *demanded* to see the contents of the cellophane bag and that this constituted an illegal seizure of the bag. He did not separately challenge the officer's right to *ask* what was in the bag. The circuit court denied the motion. The appellant was tried by a jury and was convicted of possession of a firearm by a convicted felon.

After trial, the appellant filed a motion to set aside the verdict in which he asked the court to reconsider its denial of his motion to suppress. Citing Rodriguez v. United States, 135 S. Ct. 1609 (2015), which was decided about five weeks after the appellant's trial, he argued that the traffic stop became unlawful because it was prolonged beyond the time reasonably required to issue a traffic summons. He suggested that the officer had no reason to look into the passenger side of the vehicle and was clearly "trying to find a reason to search the car."

The judge inferred from the officer's testimony that he examined the cracks in the windshield to determine whether they were large enough to constitute an equipment violation and that this action legitimately placed him on the passenger side of the vehicle, from which he first observed the suspicious cellophane wrapper. The trial court ruled that Rodriguez was distinguishable from the appellant's case because Rodriguez involved a traffic stop that had been largely completed when the officer shifted his focus to investigating possible drug possession. The court reasoned:

> [In the appellant's case,] the traffic stop was not over. It had really just begun when the officer . . . simply walked in front of the vehicle to look at the windshield, look at the inspection sticker, ended up at the passenger side, and through th[e] passenger side window saw something [that] in his training and experience . . . appeared to look like packaging for marijuana. At that point, [the officer] said, what's in the bag. [The appellant] lifted the bag up, showed it to him, and it was identifiable by the officer as marijuana.

The court found that "[t]here was no measurable increase in the duration of the traffic stop" and Rodriguez did not render the detention or search invalid. As a result, it denied the motion to set aside the verdict. At sentencing, the court imposed the jury's recommended sentence of five years.

## II. ANALYSIS

The appellate standard of review relating to a trial court's denial of a ruling on a motion to suppress evidence is well settled. We "consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial." Malbrough v. Commonwealth, 275 Va. 163, 168, 655 S.E.2d 1, 3 (2008). It is the appellant's burden to show that when viewing the evidence in such a manner, the trial court committed reversible error. Harris v. Commonwealth, 276 Va. 689, 695, 668 S.E.2d 141, 145 (2008). The question of whether a search or seizure violated the Fourth Amendment is "a mixed question of law and fact that we review *de novo*" on appeal. Id. at 694, 668 S.E.2d at 145. In doing so, however, the Court is "bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence." Malbrough, 275 Va. at 168, 655 S.E.2d at 3. Moreover, "we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*). The trial court's application of the law is independently reviewed by the appellate court. Malbrough, 275 Va. at 168-69, 655 S.E.2d at 3.

During the course of a traffic stop, an officer may engage in "ordinary inquiries incident to [the] stop." Illinois v. Caballes, 543 U.S. 405, 408 (2005). Such inquiries include, of course, the "mission" of the stop, i.e., addressing the traffic violation that warranted the stop. Id. at 407. An officer may also address related safety concerns. See, e.g., Arizona v. Johnson, 555 U.S. 323, 330-32 (2009). Appropriate matters include checking the driver's license and examining proof of the automobile's registration, inspection, and insurance. See Delaware v. Prouse, 440 U.S. 648, 658-59 (1979). An officer also may inquire "into matters unrelated to the justification for the traffic stop," and such inquiries "do not convert the encounter into something other than a lawful seizure, so long as th[ey] do not measurably extend the duration of the stop." Johnson, 555 U.S. at 333 (citing Muehler v. Mena, 544 U.S. 93, 100-01 (2005)). Finally, if an officer develops independent

reasonable suspicion or probable cause that an occupant has committed an additional traffic offense or crime, he may extend the stop for a reasonable amount of time in order to "confirm or dispel" that new suspicion. See Matthews v. Commonwealth, 65 Va. App. 334, 345, 778 S.E.2d 122, 128 (2015); Davis v. Commonwealth, 35 Va. App. 533, 539, 546 S.E.2d 252, 255 (2001). An officer's actions during a traffic stop or any other encounter implicating the Fourth Amendment are judged under a standard of objective, not subjective, reasonableness. See, e.g., Matthews, 65 Va. App. at 346, 778 S.E.2d at 128.

The appellant does not contest the validity of the traffic stop. Nor does he claim that at the time of the search of the SUV, the officer lacked probable cause to conduct the search. Instead, he contends that the trial court erred in denying his motion to suppress the evidence because during the course of the traffic stop, the officer asked about the contents of a plastic bag that was in a cup holder and "demanded" that the appellant show him the bag, inappropriately extending the stop beyond its permissible scope. The appellant suggests that because the officer could see only the top of the bag and not its contents, he could not inquire further because the bag was not related to the traffic offenses the officer was investigating. He maintains that the search of the vehicle was improper based on the prolonged stop.

The appellant's argument regarding suppression is both factually and legally flawed. Initially, it neither views the evidence in the light most favorable to the Commonwealth nor credits the factual findings of the trial court. Consequently, it is entirely inconsistent with the standard of review on appeal. When we view the evidence under the proper standard, the relevant law does not

support the appellant's conclusion that the trial court erred in denying his motion to suppress the evidence.[2]

The evidence proves that Officer Arrington saw the appellant's SUV operating erratically and also noticed that the front windshield had two large cracks in it. As Arrington followed the SUV, the driver switched lanes and abruptly turned into a parking lot without signaling. The officer initiated a traffic stop of the vehicle and went to the driver's window. He explained that he stopped the appellant for traffic violations and asked the appellant for his license and registration. He then proceeded to the front of the SUV to inspect the cracks in the windshield to determine if they constituted an equipment violation and to check for a valid inspection sticker. As the appellant concedes, all of these actions were entirely consistent with a lawful detention for traffic offenses. See Johnson, 555 U.S. at 330-32; Caballes, 543 U.S. at 407-08; Prouse, 440 U.S. at 658-59.

Once the officer had inspected the windshield, he walked to the open passenger's side window to explain what he was doing with regard to the traffic offenses and asked about the contents of the suspicious cellophane bag. The appellant suggests that the stop was impermissibly prolonged at both these points, first, when the officer went to the passenger side window after looking at the front windshield and, second, when he asked the appellant about the partially visible cellophane bag in the center console.

---

[2] Good reason exists

> for the rule that appellate courts must defer to the factual findings of the trial judge in Fourth Amendment cases. The fact patterns in such cases arrive in infinite variety, seldom or never exactly duplicated. Moreover, they involve consideration of nuances such as tone of voice, facial expression, gestures and body language seldom discernable from a printed record. The controlling inquiry is the effect of such matters on a reasonable person in light of all of the surrounding circumstances.

Malbrough, 275 Va. at 171, 655 S.E.2d at 5.

Regarding the first point, consistent with the trial court's factual findings, nothing in the record suggests that the officer was doing anything more when he walked to the passenger side window than proceeding with a lawful traffic stop based on witnessed traffic offenses and a cracked front windshield. The officer's examination of the cracks in the windshield and the vehicle inspection sticker were wholly consistent with efforts to ensure vehicle safety and check for an equipment violation, permissible during a stop for traffic offenses. See Caballes, 543 U.S. at 407-08; Prouse, 440 U.S. at 658-59. The evidence, viewed objectively, establishes that when the officer saw the top of the cellophane bag in plain view, he was legitimately in a place where he was able to converse with the driver before he went back to his vehicle to process the traffic summons.

Regarding the second point, the appellant's argument is refuted by application of the relevant law to the facts. When Officer Arrington looked in the window and saw the cellophane bag protruding from the cup holder, he asked one question, "What's in the bag?"[3] The trial court found that, at that point, the traffic stop was ongoing and "there was no measurable increase in the duration of the traffic stop" as a result of the single question. The United States Supreme Court held in Rodriguez v. United States, 135 S. Ct. 1609 (2015), however, that if an activity is not supported by independent reasonable suspicion and that activity prolongs the stop even briefly, it measurably extends the stop in an unconstitutional fashion. Id. at 1615-16 (holding *de minimis* delay unconstitutionally extends a stop); see Matthews, 65 Va. App. at 344-45, 778 S.E.2d at 127-28. Assuming without deciding that Officer Arrington's single question prolonged the appellant's

---

[3] The appellant argues that the officer did more than simply ask what was in the bag. He also claims that his response to what he characterizes as the officer's "demands" was based on a feeling that he had no choice but to show the officer the bag and admit to its contents. These contentions disregard the Commonwealth's evidence, relying instead on select portions of the testimony of the appellant and the alleged bystander, evidence rejected by the trial court. See McGee, 25 Va. App. at 198, 487 S.E.2d at 261. Accordingly, these arguments are not persuasive on appeal.

detention in violation of <u>Rodriguez</u> and was not supported by independent reasonable suspicion of criminal activity, we nevertheless must determine whether exclusion of the evidence is warranted.[4]

The judicially created exclusionary rule "prevents evidence obtained in violation of the [F]ourth [A]mendment from being used against an accused." <u>Redmond v. Commonwealth</u>, 57 Va. App. 254, 260-61, 701 S.E.2d 81, 84 (2010) (quoting <u>Commonwealth v. Ealy</u>, 12 Va. App. 744, 750, 407 S.E.2d 681, 685 (1991)). However, the exclusionary rule is an extreme remedy that courts do not apply lightly. The Supreme Court of the United States has made clear that "exclusion [of evidence] 'has always been our last resort, not our first impulse.'" <u>Herring v. United States</u>, 555 U.S. 135, 140 (2009) (quoting <u>Hudson v. Michigan</u>, 547 U.S. 586, 591 (2006)). Consequently, "[t]he rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application." <u>Id.</u> at 141 (second alteration in original) (quoting <u>Pa. Bd. of Prob. & Parole v. Scott</u>, 524 U.S. 357, 364-65 (1998)). "'[T]he exclusionary rule is not an individual right,' [and] prior precedent has 'repeatedly rejected the argument that exclusion [of evidence] is a necessary consequence of a Fourth Amendment violation.'" <u>Washington v. Commonwealth</u>, 60 Va. App. 427, 436, 728 S.E.2d 521, 525 (2012) (quoting <u>Herring</u>, 555 U.S. at 141).

The traditional test regarding application is two pronged: "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it[] and sufficiently culpable that such deterrence is worth the price paid by the justice system." <u>Matthews</u>, 65 Va. App. at 347, 778 S.E.2d at 129 (quoting <u>Herring</u>, 555 U.S. at 144). As explained through

---

[4] Consistent with the long held principle of "judicial restraint," appellate courts decide cases on the "best and narrowest ground available." <u>McGhee v. Commonwealth</u>, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010) (quoting <u>Air Courier Conf. v. Am. Postal Workers Union</u>, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)) (where the Court of Appeals and trial court properly applied then-existing law regarding the search of a vehicle incident to arrest, declining to consider a challenge to an inventory search of a vehicle under new United States Supreme Court precedent). Consequently, we consider whether the exclusionary rule applies in this case.

case law, "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Herring, 555 U.S. at 144. In Davis v. United States, 564 U.S. 229 (2011), the Supreme Court considered how the exclusionary rule applies in a situation in which the applicable law changed after the time of the search. The Court held that evidence obtained during a search conducted in reasonable reliance on precedent that was binding at the time of the search is not subject to the exclusionary rule. Id. at 240-41, cited with approval in Matthews, 65 Va. App. at 347, 778 S.E.2d at 129. The Court went on to explain that in such instances, the only thing exclusion of the evidence would do is punish "conscientious police work" because responsible law enforcement officers keep up with "'what is required of them' under Fourth Amendment [jurisprudence]" and act accordingly. Davis, 564 U.S. at 241 (quoting Hudson, 547 U.S. at 599); see Matthews, 65 Va. App. at 347-48, 778 S.E.2d at 129. This legitimate law enforcement behavior simply does not fit the intended purposes of the exclusionary rule, and in fact, the opposite is true.

In the instant case, the stop and detention of the appellant occurred on June 9, 2014, more than ten months prior to the April 21, 2015 decision of the United States Supreme Court in Rodriguez. Therefore, under Davis and its progeny, the question before us is whether the officer's challenged actions that led to the discovery of the marijuana were objectively reasonable based upon Fourth Amendment law that existed at the time of the stop. Davis, 564 U.S. at 239-40; see Matthews, 65 Va. App. at 346-47, 352, 778 S.E.2d at 128-29, 131 (holding that the officers' deviation from the purpose of the traffic stop to investigate drugs was unreasonable under Rodriguez but did not warrant application of the exclusionary rule because the officers "were following the law as it existed at the time of the stop," which was before Rodriguez was decided).

Like the Court in Matthews, 65 Va. App. 334, 778 S.E.2d 122, we hold that Officer Arrington's actions were entirely consistent with the law at the time of the stop and, therefore, the

exclusiory rule does not apply. Prior to <u>Rodriguez</u>, Supreme Court precedent made clear that "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, *so long as those inquiries do not measurably extend the duration of the stop*." <u>Johnson</u>, 555 U.S. at 333 (emphasis added) (citing <u>Muehler</u>, 544 U.S. at 100-01). Virginia cases recognized this established principle and interpreted it to permit *de minimis* delay. <u>See</u> <u>Atkins v. Commonwealth</u>, 57 Va. App. 2, 15-16, 698 S.E.2d 249, 256 (2010); <u>Ellis v. Commonwealth</u>, 52 Va. App. 220, 226-27, 662 S.E.2d 640, 643 (2008). In June of 2014, therefore, "binding precedent established that a *de minimis* delay in the completion of a traffic stop to conduct an investigation unrelated to the purpose of the stop did not violate the Fourth Amendment's prohibition against unlawful seizures." <u>Matthews</u>, 65 Va. App. at 348, 778 S.E.2d at 129. Not until the decision in <u>Rodriguez</u>, 135 S. Ct. at 1615-16, did the United States Supreme Court explain that such *de minimis* delay measurably extends a traffic stop and, consequently, absent independent reasonable suspicion, violates the Fourth Amendment. <u>See</u> <u>Matthews</u>, 65 Va. App. at 344-45, 348-49, 778 S.E.2d at 127-30.

When viewing the evidence in the light most favorable to the Commonwealth, under any objectively reasonable interpretation, Officer Arrington's single question to the appellant, "What's in the bag," created—at most—a *de minimis* delay. <u>See</u> <u>Ellis</u>, 52 Va. App. at 226-28, 662 S.E.2d at 643-44 (holding that a *de minimis* delay caused by one minute of questioning about drugs, in the middle of a traffic stop for an unrelated matter, did not invalidate later consent to a search). The record supports the trial court's factual finding that Officer Arrington had barely begun processing the traffic violations when he went to the front of the vehicle to investigate the cracks in the windshield and view the inspection sticker. No summonses had been issued for the traffic offenses at that early point in the stop. When the officer went to the open passenger window to speak with the appellant, he saw the cellophane and asked what was in the bag. The entire encounter, aside

- 11 -

from that one question, was dedicated to the traffic offenses and assessing the safety of the vehicle before issuing whatever summonses the officer deemed appropriate following his brief investigation. The sole question, related to the possible presence of illegal drugs in the SUV, did not convert the lawful detention into an unlawful seizure. See id. Based on the facts and the law at the time of the traffic stop, which permitted a *de minimis* delay, "the duration and scope of the detention in this case does not trigger the application of the exclusionary rule." Matthews, 65 Va. App. at 352, 778 S.E.2d at 131; cf. Heien v. North Carolina, 135 S. Ct. 530, 536, 540 (2014) (noting that the state statute that the officer misapplied had never been interpreted by the state's appellate courts and that the officer's misapplication of that law was reasonable).

What happened next was also entirely lawful. Officer Arrington's question about what was in the bag resulted in the appellant's exposing the bag and its contents to the officer.[5] At that time, Arrington saw "chunks" or "buds of green plant material" that he knew, based on his training and experience, were "obvious[ly]" marijuana. Subsequently, the appellant admitted that the substance was marijuana and that it belonged to him. The record supports the conclusion that once the officer saw the contents of the bag, he had independent probable cause to arrest the appellant for possession of marijuana. See, e.g., Arnold v. Commonwealth, 17 Va. App. 313, 317-18, 320, 437 S.E.2d 235, 238-39 (1993). Because he had probable cause to arrest the appellant for possession of an illegal substance, the officer was permitted to search the vehicle incident to the arrest. See Arizona v. Gant, 556 U.S. 332, 346-47 (2009). Therefore, the subsequent search of the vehicle that resulted in the discovery of the firearm did not violate the appellant's Fourth Amendment rights.

---

[5] Other than the appellant's factual claim that Officer Arrington repeatedly demanded to see the bag's contents, see supra note 3, and his additional claim that the inquiry impermissibly prolonged the stop, the appellant does not challenge the nature of Arrington's question, the officer's right to ask it, or the voluntariness of the appellant's response.

## III.  CONCLUSION

We hold that the trial court correctly denied the appellant's motion to suppress evidence.

Consequently, we affirm the conviction for possession of a firearm by a convicted felon.

<u>Affirmed.</u>