COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judges Kelsey and McClanahan
Argued at Salem, Virginia

LEROY THOMAS, S/K/A
  LEROY MICHAEL THOMAS
                                                    OPINION BY
v.        Record No. 1288-09-3              JUDGE D. ARTHUR KELSEY
                                               NOVEMBER 16, 2010
COMMONWEALTH OF VIRGINIA

                FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                            J. Leyburn Mosby, Jr., Judge

              Keith Orgera, Assistant Public Defender (Office of the
              Public Defender, on brief), for appellant.

              Benjamin H. Katz, Assistant Attorney General (Kenneth T.
              Cuccinelli, II, Attorney General, on brief), for appellee.


        The trial court found Leroy Thomas guilty of possessing a firearm as a convicted felon,

unlawfully possessing a concealed weapon, and possessing marijuana, a second or subsequent

offense.  On appeal, Thomas argues the court should have suppressed the evidence of his crimes

because the arresting officers allegedly used the traffic stop as a pretext for conducting a drug

investigation.  Disagreeing with the legal assumptions underlying Thomas's assertion, we affirm.

                                              I.

        When reviewing a denial of a suppression motion, we review the evidence "in the light

most favorable to the Commonwealth, giving it the benefit of any reasonable inferences."  Glenn

v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (en banc) (citation

omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008).  This standard requires us to "give due

weight to inferences drawn from those facts by resident judges and local law enforcement

officers."  Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 3 (2008) (citation

omitted). In doing so, we "consider facts presented both at the suppression hearing and at trial." Testa v. Commonwealth, 55 Va. App. 275, 279, 685 S.E.2d 213, 215 (2009) (citation omitted).

At about 11:30 p.m. one evening in September 2008, a Virginia State Trooper and a Lynchburg police officer on patrol together in a marked vehicle made a traffic stop of a Chevrolet Impala. The officers had just observed the Impala, while proceeding under a railroad trestle, cross over a double yellow line with both left wheels into the oncoming traffic lane. See Code § 46.2-804(6) (prohibiting crossing "double traffic lines" except when turning).[1] Thomas was seated in the front passenger seat of the Impala. After obtaining identification and vehicle registration information from the driver and Thomas, the officer returned to the patrol vehicle to request radio confirmation of their identities and the registration status of the vehicle.

While waiting for the results of the radio check, backup officers arrived and asked the driver if he had drugs in the vehicle. The driver said no and then refused a request for a consensual vehicle search. The trooper brought his "narcotics detecting canine" out from the patrol vehicle and advised the driver he intended to walk the dog around the Impala. The trooper directed the driver and Thomas to exit the car. As Thomas got out, one of the officers asked if he would consent to a pat down for weapons. Thomas stepped away, asking the officer why he thought that was necessary. When Thomas turned around, the officer saw the butt of a handgun partially sticking out from underneath Thomas's shirt. The officer yelled "gun" and then immediately seized a fully loaded .45 caliber handgun.

Moments after the seizure of the handgun, police dispatch responded to the officers' initial request for information on the driver and Thomas. Dispatch advised that Thomas was wanted on an outstanding capias warrant issued by a juvenile and domestic relations district

---

[1] The officers also observed objects dangling from the rearview mirror that appeared to be in violation of Code § 46.2-1054 (prohibiting the suspension of "any object or objects" in a way as to "obstruct the driver's clear view of the highway through the windshield").

court.[2]  Dispatch provided this information to the officers within five to seven minutes after the initiation of the traffic stop.

The officer arrested Thomas on the outstanding warrant and for carrying a concealed weapon.  Prior to searching Thomas incident to this arrest, the officer asked him if there was "anything else on his person" the officer needed to know about.  Thomas said he possessed marijuana.  The officer then searched Thomas and found on him both marijuana and imitation crack cocaine.

Prior to trial, Thomas filed a motion to suppress both his statement that he possessed marijuana and the contraband found on his person.  He argued that the "questions about drugs and so forth" constituted "an additional seizure above and beyond the traffic stop itself that was not based on any reasonable suspicion of criminal activity and that because of that everything should be suppressed, because they abandoned the purpose of the traffic stop."[3]

The prosecutor argued that under any objective standard the officers had authority to stop the vehicle for a traffic infraction.  And before the stop had come to closure, the officers also had the authority to inquire into matters unrelated to the stop.  "On top of all of that," the prosecutor added, "this defendant did have an outstanding capias.  He was going to be arrested on that capias regardless of whether or not [the officer] ever saw the gun."

The trial court denied the motion to suppress.  In its ruling from the bench, the court explained that the

> primary question is whether there was a pretext for a stop and that
> has to be judged by objective reasonable standards. . . .  I would
> grant the motion if they didn't have a -- a reason to stop the car but

---

[2]  See Price v. Commonwealth, 51 Va. App. 443, 447, 658 S.E.2d 700, 702 (2008) (defining *capias* as "simply a bench warrant of arrest").

[3] Thomas also argued the officers were factually mistaken about their observations of the vehicle crossing the double solid lines underneath the railroad trestle.  The trial court rejected that assertion, and Thomas does not repeat it on appeal.

they have -- on the objective standards they have a reason. They crossed the double yellow line. That violates the law. And I don't think there was another seizure within a seizure. I think we're still waiting on the traffic stop.

After this ruling, the trial court proceeded to hear additional evidence and found Thomas guilty of carrying a firearm as a convicted felon, unlawfully carrying a concealed weapon, and possessing marijuana, a second or subsequent offense. Thomas appeals, challenging only the trial court's denial of his motion to suppress.

## II.

On appeal, Thomas contends "the officers here wanted to investigate for drugs. They found a legal pretext to stop the car, and after accomplishing that, immediately and utterly abandoned the pretext in favor of their narcotics investigation." Appellant's Br. at 11. This argument, however, relies upon the false premise that the officers' subjective motivations can render unlawful an otherwise objectively reasonable exercise of police authority.[4]

For purposes of assessing the legality of an officer's actions, his "subjective motivation is irrelevant." Robinson v. Commonwealth, 273 Va. 26, 37, 639 S.E.2d 217, 223 (2007) (quoting Brigham City v. Stuart, 547 U.S. 398, 404 (2006)). A police officer's "action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" Stuart, 547 U.S. at 404 (emphasis in original and citations omitted). Cf. Jones v. Commonwealth, 279 Va. 665, 673, 691 S.E.2d 801, 805 (2010) (holding an "officer's subjective characterization of observed conduct is not relevant" to an objective application of the Fourth Amendment (citation omitted)).

---

[4] Thomas's argument on appeal assumes that the traffic stop, if held to be unlawful, would require suppression of the incriminating evidence. Given our holding, however, we need not address this issue. See generally United States v. Green, 111 F.3d 515, 521 (7th Cir. 1997); see also United States v. Simpson, 439 F.3d 490, 496 (8th Cir. 2006); United States v. Johnson, 383 F.3d 538, 546 (7th Cir. 2004); cf. 6 Wayne R. LaFave, Search & Seizure § 11.4(g), at 362 (4th ed. 2004).

Thus, faced with a suppression motion, a court should not limit itself "to what the stopping officer says or to evidence of his subjective rationale," Raab v. Commonwealth, 50 Va. App. 577, 583 n.2, 652 S.E.2d 144, 148 n.2 (2007) (*en banc*) (citation omitted), but instead should make "'an objective assessment of the officer's actions in light of the facts and circumstances confronting [them] at the time,' and not on the officer's actual state of mind at the time the challenged action was taken," Maryland v. Macon, 472 U.S. 463, 470-71 (1985) (quoting Scott v. United States, 436 U.S. 128, 136 (1978)).

Thomas's invocation of the "pretext" talisman presupposes a subjective standard. "Use of the word 'pretext' in such an evaluation does not resolve the question of fourth amendment compliance." Bosworth v. Commonwealth, 7 Va. App. 567, 570, 375 S.E.2d 756, 758 (1989). When "'pretext' is used to describe a police officer's reliance on an insufficient basis for stopping an automobile where a sufficient basis also exists, the word only identifies the officer's subjective intent which does not affect the constitutionality of the stop." Id. at 570-71, 375 S.E.2d at 758.

Stated another way, we do not consider allegations of the "officer's real motive" for his actions if they otherwise satisfy the objective reasonableness standard adopted by the Fourth Amendment. Id. at 571, 375 S.E.2d at 758. An officer's "ulterior motive," whatever it might be, does not nullify an objectively valid "legal justification" for his actions. Whren v. United States, 517 U.S. 806, 813 (1996). Nor does it matter that the challenged detention involves a "fine-only traffic violation" rather than a more serious offense. Arkansas v. Sullivan, 532 U.S. 769, 772 (2001) (*per curiam*). Under settled precedent, "a traffic-violation arrest . . . [will] not be rendered invalid by the fact that it was 'a mere pretext for a narcotics search.'" Id. (citation omitted).

An objective standard governs temporary investigatory detentions,[5] detentions for the purposes of issuing traffic citations,[6] detentions for purposes of serving an arrest summons under Code § 19.2-74,[7] full custodial arrests based upon probable cause,[8] as well as the scope and duration of each. Applied to the roadside stops, the

> temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave. An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.

Arizona v. Johnson, 129 S. Ct. 781, 788 (2009) (internal citations omitted); see also Atkins v. Commonwealth, 57 Va. App. 2, 15, 698 S.E.2d 249, 255-56 (2010) (quoting Johnson, 129 S. Ct. at 788); Ellis v. Commonwealth, 52 Va. App. 220, 227, 662 S.E.2d 640, 643 (2008) ("[W]here a seizure of a person is based on probable cause to believe that a traffic violation was committed, an officer does not violate the Fourth Amendment by asking a few questions about matters unrelated to the traffic violation, even if this conversation briefly extends the length of the detention . . . ." (citation omitted)).

The objective circumstances of this case proved the officers still had a "further need to control the scene" and had not yet informed "the driver and passengers they [were] free to leave." See Johnson, 129 S. Ct. at 788. At the time the officer observed the butt of the handgun

---

[5] See Woodson v. Commonwealth, 14 Va. App. 787, 792, 421 S.E.2d 1, 4 (1992) (finding an officer must have reasonable suspicion, based on objective facts, that the individual is involved in criminal activity to justify a temporary, investigatory detention).

[6] See Sullivan, 532 U.S. at 772.

[7] See Fox v. Commonwealth, 43 Va. App. 446, 450, 598 S.E.2d 770, 771-72 (2004) (applying objective standard to determine whether statutory circumstances existed).

[8] See Virginia v. Moore, 553 U.S. 164, 178 (2008) (finding no Fourth Amendment violation where officers search incident to an arrest based on probable cause that a crime was committed in their presence), rev'g, 272 Va. 717, 636 S.E.2d 395 (2006).

protruding from Thomas's clothes, police dispatch had not yet responded to the officer's request for an information check on the detainees' identifications and vehicle registration. The officers' questions about drugs and request for a consent search did not "measurably extend the duration of the stop." See id.; see also Atkins, 57 Va. App. at 17, 698 S.E.2d at 256 (holding it was "not unreasonable for the officers to continue to detain [a passenger] for a 'reasonable period of time' awaiting the results of the warrant check" on another passenger). To be sure, the officers' questions did not extend the duration of the stop at all, given that all of their inquiries took place while they were still waiting for the dispatch report.

The same can be said for the use of the drug-sniffing dog. When a "traffic stop is 'lawful at its inception and otherwise executed in a reasonable manner,' a dog sniff conducted during the stop does not infringe on a constitutionally protected privacy interest." Ellis, 52 Va. App. at 224, 662 S.E.2d at 642 (quoting Illinois v. Caballes, 543 U.S. 405, 408 (2005)); see also Wright v. Commonwealth, 52 Va. App. 263, 270-71, 663 S.E.2d 108, 112-13 (2008). The officers' use of the drug-sniffing dog did not extend, much less measurably extend, the duration of this traffic stop.

In short, we find it legally irrelevant — even if factually true — that the "officers here wanted to investigate for drugs" as Thomas alleges. See Appellant's Br. at 11. Whatever their subjective motives, the *objective* facts authorized the officers to stop the Impala and issue a summons to its driver for crossing a double line. Given that authority, the officers likewise had the power

- to obtain the registration for the vehicle and request the identities of its occupants,[9]

_____

[9] With respect to drivers, Code § 46.2-104 requires a motor vehicle operator to "exhibit his registration card, [and] driver's license" upon the officer's request. With respect to passengers, if "an officer may 'as a matter of course' and in the interest of personal safety order a passenger physically to exit the vehicle, he may surely take the minimally intrusive step of

- to seek radio dispatch confirmation of the information obtained from the vehicle occupants,[10]

- to detain Thomas, a passenger, during the duration of the stop,[11]

- to ask questions unrelated to the traffic violation,[12]

- to order the driver and Thomas out of the vehicle,[13]

- to walk a drug-sniffing dog around the vehicle,[14] and

- to seize Thomas's handgun the moment they saw it,[15]

because all these actions took place before the traffic stop had ended. The officers still had "further need to control the scene" and had not yet informed "the driver and passengers they [were] free to leave." See Johnson, 129 S. Ct. at 788.

---

requesting passenger identification." United States v. Soriano-Jarquin, 492 F.3d 495, 500 (4th Cir. 2007) (citation omitted); see also United States v. Diaz-Castaneda, 494 F.3d 1146, 1152-53 (9th Cir. 2007); United States v. Rice, 483 F.3d 1079, 1084 (10th Cir. 2007); United States v. Purcell, 236 F.3d 1274, 1277-78 (11th Cir. 2001). This conclusion necessarily follows from the proposition that, when a person is in lawful detention, an officer may "ask to examine [an] individual's identification" without any individualized suspicion of wrongdoing. Muehler v. Mena, 544 U.S. 93, 101 (2005) (quoting Florida v. Bostick, 501 U.S. 429, 434-45 (1991)).

[10] See Atkins, 57 Va. App. at 17, 698 S.E.2d at 256 (it is "not unreasonable for the officers to continue to detain appellant for a 'reasonable period of time' awaiting the results of [a] warrant check"); Jones v. Commonwealth, 279 Va. 665, 674, 691 S.E.2d 801, 805-06 (2010) (finding officers had authority to continue to detain the defendant "for a reasonable period of time" while confirming his true identity).

[11] See Brendlin v. California, 551 U.S. 249, 258 (2007); Delaware v. Prouse, 440 U.S. 648, 653 (1979).

[12] See Johnson, 129 S. Ct. at 788; Atkins, 57 Va. App. at 15, 698 S.E.2d at 256; Ellis, 52 Va. App. at 227, 662 S.E.2d at 643.

[13] See Brendlin, 551 U.S. at 258; Maryland v. Wilson, 519 U.S. 408 (1997); Pennsylvania v. Mimms, 434 U.S. 106 (1977) (per curiam).

[14] See Wright, 52 Va. App. at 270-71, 663 S.E.2d at 112-13.

[15] See Christian v. Commonwealth, 33 Va. App. 704, 714-15, 536 S.E.2d 477, 483 (2000) (en banc) (finding that where police observed defendant "displaying a firearm" they were "entitled to seize defendant and take control of the weapon, thereby neutralizing an imminent threat in a prudent and measured fashion").

III.

Because the trial court correctly denied Thomas's motion to suppress, we affirm his convictions.

Affirmed.