COURT OF APPEALS OF VIRGINIA

Present:    Judges Chaney, Raphael and Callins
Argued by videoconference


LEVELLE D. TERRY

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1365-21-2                      JUDGE STUART A. RAPHAEL
                                                    JANUARY 31, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Randall G. Johnson, Jr., Judge

Kevin E. Calhoun for appellant.

Lucille M. Wall, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Claiming that the trial court erred in denying his motion to suppress, Levelle D. Terry

appeals his two convictions for possession of a Schedule I or II controlled substance (cocaine

and methamphetamine), in violation of Code § 18.2-250. We find that Terry was lawfully

detained as a passenger in a vehicle properly stopped for traffic infractions. During that lawful

detention, the officer properly requested Terry's identification, which Terry voluntarily provided.

Discovering that Terry had outstanding arrest warrants, the officers lawfully arrested him,

discovering those narcotics in their search incident to arrest. Rejecting Terry's claim that he was

tricked into providing his identification, we affirm his convictions.

* Pursuant to Code § 17.1 413, this opinion is not designated for publication.

BACKGROUND[1]

On June 24, 2020, Henrico County Police Officer Michael Berry observed a car without a front license plate being driven away from a hotel. Officer Berry followed the vehicle, intending to make a traffic stop for the missing plate. The driver then made a right turn from the center lane into a 7-Eleven parking lot. Officer Berry turned on his warning lights and initiated a traffic stop.

As Officer Berry approached the driver's side of the vehicle, the driver was stepping out. Berry instructed the driver to get back inside, and the driver complied. Berry explained the reason for the stop and asked the driver for his driver's license and registration. While the driver searched for his registration, Berry requested a K9 unit because "[t]he hotel and the area [the vehicle] left is a high narcotics area."

There were two passengers in the vehicle: Terry sat in the front passenger seat, and a woman sat in the backseat. Officer Berry asked them both for identification. Terry hesitated and asked why the officer needed it. Berry replied that he "tr[ies] to identify everybody that's in the vehicle on a traffic stop just so [he] know[s] . . . who's in the car." Terry responded, "Oh, all right," and handed over his identification. By that point, Officer Ralph Adams had arrived and approached the passenger side of the car.

As the driver kept looking for his registration, Officer Berry engaged the backseat passenger in conversation. He asked whether there was anything illegal in the car and about her previous drug use. After several minutes of looking for his registration, the driver told Berry that he could not find it. Berry then asked the driver the same questions he had asked the backseat passenger, because the vehicle was "coming from a high narcotic area." When he finished speaking with the driver, Berry returned to his patrol car and ran each occupant's information.

---

[1] On appeal, "we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

In the meantime, Terry asked Officer Adams if he "could go into the store." Adams responded that Terry needed to wait but could go into the store "as soon as" Officer Berry "was done," which "shouldn't be long." About a minute later, Berry received notification that Terry had outstanding arrest warrants. Berry radioed for backup and prepared a ticket for the driver.

When the K-9 officer arrived soon after, all occupants were instructed to remain in the vehicle. The drug-sniffing dog alerted that there were narcotics in the car. Because Terry had outstanding warrants, the officers extracted him first. Although Terry had been cooperative and calm until then, he began to argue and then tried to flee. Officer Adams placed Terry in handcuffs and told him that Officer Berry had discovered his outstanding warrants.

After confirming that the warrants were valid, Adams arrested Terry. Adams conducted a search incident to arrest and discovered a baggie of white powder and several other items. Testing confirmed—and Terry stipulated—that the baggie contained cocaine and methamphetamine.

Terry moved to suppress the narcotics, arguing that he was illegally detained. He reasoned that the seizure was not a typical traffic stop in which it would have been "impractical or illogical to ask passengers to . . . get out and walk away." Terry claimed that he had arrived at his intended destination—the 7-Eleven—and there were no safety concerns that justified detaining him further, rather than allowing him to join "the other people who were milling about going about their business in the store." Terry also argued that the officers obtained his identification through illegal and coercive tactics.

The trial court denied Terry's suppression motion, finding that Terry was legally detained as part of a valid traffic stop and that he was not coerced into handing over his identification. The jury convicted Terry of two counts of possession in violation of Code § 18.2-250. Terry was sentenced to ten years' incarceration on each conviction, with six years and six months suspended on the

cocaine conviction and all ten years suspended on the methamphetamine conviction. He noted a

timely appeal.

ANALYSIS

"The law regarding appellate review of a trial court's decision on a motion to suppress is

well settled. The appellant bears the burden of establishing that reversible error occurred."

*Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020). "[A]n appellate court must give

deference to the factual findings of the circuit court and give due weight to the inferences drawn

from those factual findings . . . ." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (first

alteration in original) (quoting *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008)). "On

appeal, a 'defendant's claim that evidence was seized in violation of the Fourth Amendment

presents a mixed question of law and fact that we review de novo.'" *Cole v. Commonwealth*,

294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)).

A. *Terry was properly detained as part of a lawful traffic stop*
   *(Assignment of Error 1).*

Terry claims that his detention was unlawful. He argues that the stop was "not a

traditional traffic stop" because the occupants had already arrived at their intended destination.

Terry theorizes that there were "three separate *Terry*[2] stops on each of the three passengers in the

vehicle," so to justify detaining him, the officers needed reasonable, articulable suspicion that

Terry was about to commit a crime or that he posed a risk to officer safety. Terry reasons that,

because the officers admitted that Terry was not suspected of criminal wrongdoing and did not

threaten their safety, his detention was unlawful.

"The Fourth Amendment protects people from unreasonable searches and seizures."

*Williams*, 71 Va. App. at 476. When determining whether the Fourth Amendment has been

---

[2] *See Terry v. Ohio*, 392 U.S. 1 (1968).

violated, we look at the totality of the circumstances. *Samson v. California*, 547 U.S. 843, 848 (2006). "Although limited in purpose and length of detention, an investigative traffic stop constitutes a seizure within the meaning of the Fourth Amendment." *Harris v. Commonwealth*, 276 Va. 689, 694 (2008). An officer may initiate a traffic stop only when he has reasonable suspicion to believe that a traffic or equipment violation has occurred. *Bass v. Commonwealth*, 259 Va. 470, 475 (2000).

During a lawful traffic stop, "a police officer effectively seizes 'everyone in the vehicle,' the driver and all passengers." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009) (quoting *Brendlin v. California*, 551 U.S. 249, 255 (2007)). "'[A]s a practical matter, the passengers are already stopped by virtue of the stop of the vehicle,' so 'the additional intrusion on the passenger is minimal.'" *Id.* at 332 (quoting *Maryland v. Wilson*, 519 U.S. 408, 413-15 (1997)). Like the driver, the passenger is considered "seized" from the time the vehicle is stopped. *Id.*

"The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop." *Id.* at 333. During a lawful stop, police may "obtain the registration for the vehicle and request the identities of its occupants," "seek radio dispatch confirmation of the information obtained from the vehicle occupants," detain the driver and passengers for "the duration of the stop," and "ask questions unrelated to the traffic violation." *Thomas v. Commonwealth*, 57 Va. App. 267, 277 (2010). "An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Johnson*, 555 U.S. at 333. Because "traffic stops are 'especially fraught with danger to police officers[,]' '[t]he risk of harm to both the police and the occupants [of a stopped vehicle] is minimized . . . if the officers routinely exercise unquestioned command of the

situation.'" *Id.* at 330 (third alteration in original) (first quoting *Michigan v. Long*, 463 U.S. 1032, 1047 (1983); then quoting *Wilson*, 519 U.S. at 414).

In this case, the officers lawfully stopped the driver's vehicle for traffic infractions. Officer Berry saw that the vehicle lacked a front license plate and had made an illegal right-hand turn. Having observed both an equipment and a traffic violation, Berry had reasonable suspicion to initiate the traffic stop. *Bass*, 259 Va. at 475. Having lawfully stopped the vehicle, Berry could legally detain Terry—as "a passenger" in the vehicle—for "the duration of the stop." *Thomas*, 57 Va. App. at 277. Berry was also permitted "to obtain the registration for the vehicle and request the identities of its occupants." *Id.* Terry's outstanding arrest warrants were discovered during that lawful investigation.

That the vehicle had arrived at its destination, the 7-Eleven, does not take the case out of the traffic-stop context. Because the officers were entitled to "exercise unquestioned command of the situation" during the stop, *Johnson*, 555 U.S. at 330 (quoting *Wilson*, 519 U.S. at 414), they were not required to let Terry exit the vehicle to go into the store. "[T]he same weighty interest in officer safety . . . is present regardless of whether the occupant of the stopped car is a driver or passenger." *Id.* at 331 (first alteration in original) (quoting *Wilson*, 519 U.S. at 413). Indeed, "the motivation of a passenger to employ violence to prevent apprehension of . . . a crime . . . is every bit as great as that of the driver." *Id.* at 331-32 (quoting *Wilson*, 519 U.S. at 414). The officers were "not constitutionally required to give [the passenger] an opportunity to depart the scene after he exited the vehicle without first ensuring that, in so doing, [the officers were] not permitting a dangerous person to get behind [them]." *Id.* at 334. "It is also reasonable for passengers to expect that a police officer at the scene of a crime, arrest, or investigation will not let people move around in ways that could jeopardize his safety." *Brendlin*, 551 U.S. at 258.

*B.  Terry voluntarily provided the officer with his identification (Assignment of Error 2).*

Terry argues that "any consent he provided to the police to review his identification card and run the information it contained through police databases was unlawfully obtained because . . . he was being illegally detained by the police."  Terry incorporates his earlier arguments that the detention was illegal and notes that any consent he provided was tainted by that illegality. He also argues that his consent was not voluntary because it was obtained through coercive and deceptive police actions.  Terry says that Officer Berry failed to disclose that he planned to check for outstanding warrants and failed to advise that Terry was not required to provide his identification.  Terry adds that the presence of multiple officers on the scene suggested that he had to comply.

As explained above, we find that Terry was lawfully detained during a valid investigative traffic stop.  As part of that lawful stop, Officer Berry could request Terry's identification and verify the information through the police database.  Although neither party cites it, our decision in *Thomas* governs this issue: "With respect to passengers, if 'an officer may "as a matter of course" and in the interest of personal safety order a passenger physically to exit the vehicle, he may surely take the minimally intrusive step of requesting passenger identification.'"  *Thomas*, 57 Va. App. at 277 n.9 (quoting *United States v. Soriano-Jarquin*, 492 F.3d 495, 500 (4th Cir. 2007)).[3]

_____

[3] Although the United States Supreme Court has not decided the question, "all federal circuit courts to address the issue have concluded that officers may request a passenger's identification during a traffic stop and run a warrants check, even absent an independent basis for doing so."  *Perozzo v. State*, 493 P.3d 233, 238-39 & n.19 (Alaska Ct. App. 2021) (collecting cases).  A handful of "state courts, however, have concluded that officers are prohibited from requesting identification from passengers during a traffic stop, absent reasonable suspicion of wrongdoing or some other case-specific justification beyond general officer safety concerns." *Id.* at 239 & n.24 (collecting cases).  Barring a contrary ruling by the United States Supreme Court, by our Supreme Court, or by a decision of this Court sitting en banc, we must follow *Thomas*.

We also agree with the trial court that Terry's acquiescence to Officer Berry's request was voluntary. Berry *requested* Terry's identification. Berry did not become visibly agitated or impatient when Terry asked why Berry needed it. Berry explained that he simply "wanted to know who [he was] talking to," and Terry, without objection or further questions said, "Oh, all right," handing it over. The evidence supported the trial court's finding that Berry's request for Terry's identification was not coercive. We reject Terry's argument that Berry was required to inform him of his right to refuse the request for identification. An officer's "failure to inform [a] defendant[] of [his] [F]ourth [A]mendment protections or [his] right to refuse consent [to a search] does not render the consent involuntary." *Limonja v. Commonwealth*, 7 Va. App. 416, 424 (1988). In short, we conclude that Terry provided his identification voluntarily and was not coerced into doing so.

CONCLUSION

Terry was detained during a valid investigative traffic stop. Officer Berry properly requested Terry's identification, and Terry provided it voluntarily. Accordingly, the trial court did not err in denying Terry's motion to suppress.

*Affirmed.*