COURT OF APPEALS OF VIRGINIA

Present:    Judges Raphael, White and Senior Judge Petty
Argued by videoconference


BRYAN TEMPLE SMITH

                                                            OPINION BY
v.        Record No. 0169-22-2                    JUDGE STUART A. RAPHAEL
                                                            SEPTEMBER 5, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CAROLINE COUNTY
Sarah L. Deneke, Judge[1]

David C. Reinhardt (Elliott B. Bender; Reinhardt Law Firm, PLLC;
Bender Law Group, PLLC, on briefs), for appellant.

Rebecca M. Garcia, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Bryan Temple Smith challenges his convictions for driving with a revoked license while

intoxicated and for driving while intoxicated (DWI), third offense within 10 years.  Ten days

after state troopers stopped Smith for driving with a missing tag light in violation of Code

§ 46.2-1003, an amendment took effect that prohibited traffic stops based on such violations and

that barred the Commonwealth from introducing any evidence "obtained as the result of a stop in

violation of" the amendment.  2020 Va. Acts Spec. Sess. I chs. 45, 51.  We disagree with Smith

that the amendment was retroactive.  We also disagree with Smith that the trial court erred in

admitting (or that the jury erred in relying on) a Department of Motor Vehicles transcript to

evidence Smith's two prior DWI convictions.  And we find no error in the trial court's decision

to permit the Commonwealth's expert to testify about the effects of alcohol on the body to

_____

[1] Judge Charles S. Sharp presided over the pretrial motions hearing, and Judge Sarah L.
Deneke presided over the trial and sentencing hearings.

corroborate that what the troopers observed was, in fact, the behavior of an intoxicated driver. Accordingly, we affirm Smith's convictions.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard" the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

On February 19, 2021, Virginia State Police Troopers Zachary Homlish and Robert Swift stopped a tan Ford Bronco, driven by Smith, after observing that the truck was missing a tag light. When asked for his license and registration, Smith responded that "he was not supposed to be driving" because "he was in rehab due to a previous [DWI] in Henrico." Homlish smelled the faint odor of alcohol, and Smith admitted to having consumed "a couple of beers."

Smith complied with the troopers' request to perform field sobriety tests. When Smith was asked to follow an object with his eyes without moving his head, Homlish observed nystagmus, an "involuntary jerking of the eyes." Smith repeatedly moved his head during the test after being instructed not to. And Smith was unable to stand on one leg for longer than four seconds. Stumbling, he explained to the trooper, "I already told you I've been drinking." He later admitted to having drunk "six beers" since "lunchtime." The troopers arrested Smith and transported him to jail to have his blood drawn. When read the implied-consent form for the blood draw, Smith responded, "how do you expect a drunk person to understand all that?"

- 2 -

Smith was indicted for (1) driving with a revoked license while intoxicated, in violation of Code § 46.2-391(D)(2)(a)(ii), and (2) DWI, third offense within 10 years, in violation of Code §§ 18.2-266 and -270.  Smith was not charged with operating a vehicle with a defective tag light.

At the time of Smith's arrest, Code § 46.2-1003 provided that it was "unlawful for any person to use or have as equipment on a motor vehicle operated on a highway any device or equipment . . . which is defective or in unsafe condition."  2017 Va. Acts ch. 670 (Code § 46.2-1003).  Smith moved to suppress the Commonwealth's evidence, arguing that a 2020 amendment to Code § 46.2-1003 prohibited law-enforcement officers from stopping vehicles for defective equipment.  *See* 2020 Va. Acts Spec. Sess. I chs. 45, 51 (Code § 46.2-1003(C)).

The prosecutor acknowledged at the suppression hearing that the officers who stopped Smith had been advised to be on the lookout for his vehicle based on a tip from a witness.  The witness reported seeing the vehicle swerving; the driver then stopped to buy beer and drove off with his hazard lights on.  Smith argued that suppression was warranted because the purpose of the 2020 law was to guard against "[p]retextual stops" based on minor traffic offenses.  But the trial court denied Smith's motion, concluding that the amendment was not retroactive.

At trial, after the prosecution failed to prove that the blood draw was performed by a person qualified under Code § 18.2-268.5,[2] the trial court refused to admit the certificate of analysis into evidence.  Without the certificate of analysis, the Commonwealth sought to prove Smith's intoxication through the troopers' testimony and the dash-camera footage of the traffic stop.  In addition, over Smith's objection, the prosecution called Dr. Jon K. Dalgleish, Ph.D., as an expert on the effects of alcohol on a typical individual.

---

[2] Code § 18.2-268.5 provides that "only a physician, registered nurse, licensed practical nurse, phlebotomist, graduate laboratory technician or a technician or nurse designated by order of a circuit court acting upon the recommendation of a licensed physician . . . shall withdraw blood for the purpose of determining its alcohol . . . content."

Dr. Dalgleish testified that a person with a blood-alcohol content (BAC) of 0.08 would experience "significant adverse effects in judgment," a slower processing speed, less fine-motor control, slower reaction times, and impaired balance. He also testified that a person with a BAC of 0.15 would have "more adverse effects in balance and coordination, slurring of speech, problems forming sentences, [and] problems maintaining an upright posture or stumbling." And the more alcohol in the system, he explained, the more pronounced the "horizontal gaze nystagmus" effect, an involuntary jerking of the eyes.

To prove that Smith had two prior DWI convictions, the Commonwealth introduced a DMV transcript showing that Smith was convicted in the Henrico County General District Court of (1) driving while intoxicated in May 2016, and (2) driving while intoxicated, second offense within 10 years, in June 2020. The Commonwealth also presented the June 2020 court order, signed by the judge, stating that Smith pleaded guilty to the DWI-second offense. The Commonwealth did not offer the court order reflecting the DWI-first conviction in 2016.

The troopers were permitted to testify that they reviewed the DMV transcript at the scene. Trooper Swift told the jury that Smith had two prior DWI convictions as shown in the DMV transcript; Swift admitted, however, that he never saw a copy of Smith's DWI-first conviction. The trial court denied Smith's motion to exclude the DMV transcript and denied his motion to strike the Commonwealth's evidence.

In Smith's case-in-chief, the trial court received into evidence a letter addressed "To Whom It May Concern," signed by a deputy clerk for the Henrico County General District Court. The prosecutor's office had given the letter to Smith's counsel in discovery. The letter identified Smith and the case number for the DWI-first conviction shown on the DMV transcript. The letter stated: "After conducting a search for the above referenced case, we are unable to locate it at this time." After Smith rested, the trial court denied his renewed motion to strike.

- 4 -

The jury convicted Smith of both charges, and the trial court sentenced him to ten years' imprisonment with eight years and six months suspended. Smith noted a timely appeal.

ANALYSIS

Smith's five assignments of error can be grouped into three categories. We consider them in order.

A. *Retroactivity (Assignment of Error 1)*

Smith argues that the evidence against him should have been suppressed because the troopers' stated reason for stopping him was for driving with a defective tag light in violation of Code § 46.2-1003. On November 9, 2020, three months before the stop, the Governor signed into law chapters 45 and 51 of the Acts of Assembly. 2020 Va. Acts Spec. Sess. I chs. 45, 51. A provision of that bill added subsection C to Code § 46.2-1003, barring a law-enforcement officer from stopping a person for driving a motor vehicle with defective vehicle equipment. *Id.* (Code § 46.2-1003(C)). The amendment also imposed a statutory exclusionary rule for evidence obtained through a violation of that requirement:

> No evidence discovered or obtained as the result of a stop in violation of this subsection, including evidence discovered or obtained with the operator's consent, shall be admissible in any trial, hearing, or other proceeding.

*Id.* When Smith was stopped on February 19, 2021, however, the 2020 law had not yet taken effect. Without an emergency-enactment clause, the bill did not become law until March 1, 2021, "the first day of the fourth month following the month of adjournment of the special session." Va. Const. Art. IV, § 13; Code § 1-214(B).

Yet Smith claims that the amendment should be given retroactive effect. "Whether a statute should be applied retroactively is . . . a question of law that an appellate court reviews *de novo*." *Street v. Commonwealth*, 75 Va. App. 298, 304 (2022). "The 'usual rule' regarding a new statute is 'that legislation is . . . prospective' only." *Id.* at 305 (alteration in original)

- 5 -

(quoting *Martin v. Hadix*, 527 U.S. 343, 357 (1999)). "The retroactivity of statutes is disfavored," and ordinarily "[a] statute is retroactive only if the legislature includes an express provision or other clear language indicating that it applies retroactively." *Id.* (citing *McCarthy v. Commonwealth*, 73 Va. App. 630, 647 (2021)). "[E]very reasonable doubt is resolved against a retroactive operation of a statute, and words of a statute ought not to have a [retroactive] operation unless they are so clear, strong[,] and imperative that no other meaning can be annexed to them." *Id.* (third alteration in original) (quoting *Taylor v. Commonwealth*, 44 Va. App. 179, 185 (2004)).

The 2020 legislation in question amended 19 separate code provisions that previously provided a basis for law-enforcement officers to conduct a lawful stop. 2020 Va. Acts Spec. Sess. I chs. 45 (H.B. 5058), 51 (S.B. 5029). The amending language was similar for all 19 provisions, providing that "[n]o evidence discovered or obtained" through a "violation" of the particular code section would be "admissible in any trial, hearing, or other proceeding" (the "in-violation-of" language).[3]

We have already addressed the retroactivity of several of these 19 in-violation-of provisions, holding each time that the provision was not retroactive. First, in *Montgomery v.*

---

[3] *See* 2020 Va. Acts Spec. Sess. I chs. 45, 51 (Code § 15.2-919(B) (motorcycle, moped, or motorized skateboard or scooter noise); Code § 18.2-250.1(F) (odor of marijuana); Code § 46.2-334.01(F) (driving without license or permit); Code § 46.2-335(E) (using wireless device while driving on learner's permit); Code § 46.2-646(E) (driving less than four months after expiration of registration sticker); Code § 46.2-810.1(C) (smoking in vehicle with minor present); Code § 46.2-923(C) (pedestrian jay-walking); Code § 46.2-926(B) (stepping onto a highway where the pedestrian cannot be seen); Code § 46.2-1003(C) (defective motor-vehicle equipment); Code § 46.2-1013(B) (defective tail lights); Code § 46.2-1014(B) (defective brake lights); Code § 46.2-1014.1(B) (missing or non-compliant supplemental high-mount stop light); Code § 46.2-1030(F) (defective headlights and illuminating devices); Code § 46.2-1049(B) (defective exhaust system); Code § 46.2-1052(P) (use of tinting films); Code § 46.2-1054(B) (suspended objects that obstruct view); Code § 46.2-1094(F) (front-seat occupants without seatbelts); Code § 46.2-1157(E) (expired vehicle-inspection sticker); Code § 46.2-1300(E) (violating local ordinance relating to motor-vehicle ownership or maintenance)).

*Commonwealth*, 75 Va. App. 182, 200 (2022), we held that Code § 18.2-250.1(F)—prohibiting police from stopping a person based "on the odor of marijuana"—did not apply to arrests made before the March 1, 2021 effective date. We emphasized the statutory phrase, "evidence discovered or obtained pursuant to a *violation of this subsection.*" 75 Va. App. at 195 (quoting Code § 18.2-250.1(F)). We explained that the evidence in that case "was *not* discovered or obtained 'pursuant to a violation' of Code § 18.2-250.1(F), because one cannot violate a statute or break a rule that does not [yet] exist." *Id.* at 196 (quoting Code § 18.2-250.1(F)). "Because the statute was not in effect at the time of the search, no law enforcement officer could have violated it." *Id.*

After Code § 18.2-250.1(F) was repealed, amended, and reenacted as Code § 4.1-1302(A) of the Cannabis Control Act, *see* 2021 Va. Acts Spec. Sess. I chs. 550, 551, we reaffirmed in *Street* that its language was not retroactive to a search conducted in 2019, before the effective date of either Code § 18.2-250.1(F) or § 4.1-1302. 75 Va. App. at 305. *Street* repeated *Montgomery*'s emphasis on the in-violation-of language. *Id.* at 307. "Simply put, the 2019 search could not violate a nonexistent statute . . . . As a result, a plain reading of the statute supports application of the general rule that it does not apply retroactively." *Id.* at 307-08. We added that if the General Assembly had wanted the amendment to apply retroactively, it "could have said so explicitly," or it could have said "'obtained *in such a manner*' (based on odor)," rather than "*pursuant to a violation of this subsection.*" *Id.* at 308.

We considered a second of those 19 provisions in *Hogle v. Commonwealth*, 75 Va. App. 743 (2022), holding that Code § 46.2-646(E) did not apply retroactively to bar evidence seized during a traffic stop for an expired registration sticker. We focused again on the in-violation-of language. When the trooper there "stopped Hogle in September of 2019, the evidence discovered or obtained was not 'the result of a stop in violation of th[e] subsection'. . . . Because

- 7 -

the [subsection] was not in effect at the time of the search, no law enforcement officer could have violated it." *Id.* at 751-52 (first and third alterations in original) (quoting *Montgomery*, 75 Va. App. at 196).

We have applied the same reasoning in unpublished opinions[4] to hold that the amendments to two of the other 19 statutes do not apply retroactively, including the one at issue here, Code § 46.2-1003(C). *See Moore v. Commonwealth*, No. 0942-22-1, slip op. at 4-5, 2023 WL 3695931, at *2-3 (Va. Ct. App. May 30, 2023) (holding that Code § 46.2-1003(C) is not retroactive); *Swinson v. Commonwealth*, No. 0351-22-3, slip op. at 6-10, 2023 WL 1111688, at *3-5 (Va. Ct. App. Jan. 31, 2023) (same); *Bolden v. Commonwealth*, No. 0999-22-3, slip op. at 4-6, 2023 WL 3468331, at *2-3 (Va. Ct. App. May 16, 2023) (holding that Code § 46.2-1013(B) is not retroactive). As *Moore* explained, "[o]ur recent precedent forecloses" the argument that Code § 46.2-1003(C) is retroactive because its language "is indistinguishable from the language this Court analyzed in *Street*." Slip op. at 1, 3, 2023 WL 3695931, at *1, *2.

*Montgomery* and *Street* described that language as creating a statutory "exclusionary rule" that provided broader protection for defendants than is required by the Fourth Amendment. *See Montgomery*, 75 Va. App. at 198; *Street*, 75 Va. App. at 309 n.7. Under the Fourth Amendment, "the constitutional reasonableness of traffic stops" does not "depend[] on the actual motivations of the individual officers involved." *Whren v. United States*, 517 U.S. 806, 813 (1996). "An officer's 'ulterior motive,' whatever it might be, does not nullify an objectively valid 'legal justification' for his actions." *Thomas v. Commonwealth*, 57 Va. App. 267, 274 (2010) (quoting *Whren*, 517 U.S. at 813). In other words, even if an officer uses the defendant's minor traffic offense as a "legal pretext to stop the car," it does not invalidate the reasonableness

---

[4] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value. Rule 5A:1(f)." *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012).

of the stop under the Fourth Amendment. *Id.* at 273-74. *See, e.g.*, *Arkansas v. Sullivan*, 532

U.S. 769, 772 (2001) ("[A] traffic-violation arrest . . . [will] not be rendered invalid by the fact

that it was 'a mere pretext for a narcotics search.'" (second and third alterations in original)

(quoting *Whren*, 517 U.S. at 812-13)). But "States are free to provide protections 'beyond the

level that the Fourth Amendment requires . . . exclusively as matters of state law.'" *Street*, 75

Va. App. at 309 n.7 (alteration in original) (quoting *Virginia v. Moore*, 553 U.S. 164, 171

(2008)). The General Assembly chose to add such protections for persons stopped by law-

enforcement officers based on one of the 19 listed offenses.

Given the similar language and common purpose of the amendments in the 2020

legislation, it is impossible to distinguish the in-violation-of language in Code § 46.2-1003(C)

from the parallel amendments to the other 18 provisions, including the ones construed in

*Montgomery* and *Hogle*. The troopers who stopped Smith in February 2021 because his tag light

was out could not have stopped him "in violation of" subsection C because that subsection had

not yet become law. Thus, the trial court did not err in denying Smith's suppression motion.

### B. Objections to the DMV Transcript

Smith raises three assignments of error relating to the trial court's admitting the DMV

transcript into evidence. We consider his objections in order, after briefly describing the

statutory scheme.

Code § 18.2-270 increases the penalty for driving while intoxicated if the defendant has

been previously convicted of a DWI offense. As relevant here, the statute provides that a

"person convicted of three [DWI] offenses . . . committed within a 10-year period shall upon

conviction of the third offense be guilty of a Class 6 felony." Code § 18.2-270(C)(1). The

punishment must "include a mandatory minimum sentence of 90 days" and "a mandatory

minimum fine of $1,000." *Id.* The Commonwealth must prove "all elements of [the] crime,

including prior convictions, beyond a reasonable doubt." *Mwangi v. Commonwealth*, 277 Va. 393, 395 (2009).

The prior convictions, however, may be proved by the admission of a DMV abstract or transcript of the defendant's driver-conviction record. Code § 46.2-384. When a person is convicted of a motor-vehicle offense, the clerk of the general district court or circuit court in which the conviction is rendered must "forward an abstract of the record to the [DMV] Commissioner within 18 days after such conviction." Code § 46.2-383(A). When a law-enforcement officer arrests a person for certain driving offenses, including DWI, the officer must request from the DMV "an abstract or transcript of the person's driver's conviction record on file at the Department." Code § 46.2-384. And when "a necessary element of the offense charged is that the defendant was previously convicted of the same or similar offense," the DMV's certified copy of "that portion of the transcript relating to the relevant prior conviction, shall be prima facie evidence of the facts stated therein with respect to the prior offense." *Id.*

### 1. Proof of the DWI-First Conviction (Assignment of Error 2)

Smith argues that the trial court should have granted his motion to strike the evidence on the DWI third-offense charge. In his view, the letter stating that the clerk could not find the file for the DWI-first conviction negated the Commonwealth's proof that Smith was convicted of the requisite "first" offense.[5]

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The relevant issue on appeal is,

---

[5] Smith does not challenge the sufficiency of the evidence underlying his conviction for driving with a revoked license.

'upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Lambert v. Commonwealth*, 298 Va. 510, 515 (2020) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)).

Smith relies on *Mwangi*, in which the Supreme Court held that a DMV transcript evidencing a DWI conviction was "rebutted" when the Commonwealth also introduced a "summons" that negated the conviction's validity. 277 Va. at 394-95. Although the summons indicated that Mwangi had entered a guilty plea, was found guilty, and was sentenced to jail, the judge had not signed the disposition on the back of the summons. *Id.* "In a court-not-of-record, a judge's signature proves the rendition of a judgment," and because the summons was not signed, the "'purported disposition on the back of [the] warrant [was] not an order.'" *Id.* (quoting *Moreau v. Fuller*, 276 Va. 127, 137 (2008)). So the Court vacated Mwangi's DWI-third conviction and remanded the case to retry Mwangi on a lesser-included DWI charge, "if the Commonwealth be so advised." *Id.* at 395.

Unlike the unsigned disposition in *Mwangi*, the clerk's letter here did not rebut the DMV transcript as a matter of law. Taken in the light most favorable to the Commonwealth, the letter reported only that the clerk could not "locate" the file "at this time." It did not show that the criminal case never existed or that the DWI-first conviction was invalid because the judge failed to sign the disposition. Absent such decisive rebuttal evidence, the DMV transcript was "prima facie evidence" of the first and second DWI convictions. Code § 46.2-384. Although the conviction order was not introduced to corroborate the May 2016 conviction, "[p]rior convictions may be proved by any competent evidence." *Farmer v. Commonwealth*, 62 Va. App. 285, 290 (2013) (alteration in original) (emphasis omitted). That the DWI-first conviction was rendered as shown on the DMV transcript was buttressed by the "presumption of

regularity," *id.* at 289, that the Henrico clerk transmitted an abstract of the conviction to the DMV, as required by Code § 46.2-383(A). And both the second conviction order and the DMV transcript reported the June 2020 conviction as a *second* DWI offense, corroborating that the May 2016 conviction shown on the DMV transcript was the *first* DWI conviction.

To be sure, a finder of fact could properly conclude that the prosecution's evidence of a prior conviction based solely on a DMV transcript is outweighed by other evidence that the DMV report may be in error. Still, it was reasonable for the jury here to have concluded from the DMV transcript, together with Smith's conviction order for a second DWI in 2020, that Smith had been convicted of two prior DWI offenses within the preceding ten years. The clerk's letter affected the weight of the DMV transcript but did not invalidate it.

### 2. *DMV Transcript (Assignment of Error 3)*

Smith next claims that the trial court should have excluded the DMV transcript altogether. He argues in light of the clerk's "To Whom It May Concern" letter that the probative value of the DMV transcript was "substantially outweighed by . . . the danger of unfair prejudice." Va. R. Evid. 2:403(a)(i).

"It is well-settled that '[t]he responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court.'" *Walker v. Commonwealth*, ___ Va. ___, ___ (June 1, 2023) (alteration in original) (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 715 (2008)). Since "all probative direct evidence generally has a prejudicial effect to the opposing party," *Lee v. Spoden*, 290 Va. 235, 251 (2015), Rule 2:403(a)(i) focuses on "unfair" prejudice. It refers "to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements" of the offense. *Lee*, 290 Va. at 251. Appellate courts give "deference . . . to trial judges in

- 12 -

balancing probative value with undue prejudice." *Walker*, ___ Va. at ___. Absent an abuse of discretion, we will not disturb how the trial judge struck that balance. *Lee*, 290 Va. at 251.

We find no such abuse of discretion here. As "prima facie evidence" of Smith's two prior DWI convictions, Code § 46.2-384, the DMV transcript had substantial probative value. And we have rejected Smith's claim that, as to the DWI-first conviction, the clerk's "To Whom It May Concern" letter rebutted the DMV transcript as a matter of law. In short, the trial court could properly conclude from the transcript that Smith would not suffer *unfair* prejudice from the transcript's admission. The evidence, for instance, did not invite the jury to decide Smith's guilt based on matters "unrelated to the elements" of the offense. *Lee*, 290 Va. at 251. To the contrary, the number of prior convictions was essential to establishing a *third* DWI offense within ten years.

### 3. Testimony About Prior Convictions (Assignment of Error 5)

Smith argues in his fifth assignment of error that *if* the trial court erred in admitting the DMV transcript, it necessarily erred in allowing the troopers' testimony about Smith's DWI convictions listed on that transcript. Given our conclusion that the trial court did not err in admitting the DMV transcript, this issue is moot. *See Rozario v. Commonwealth*, 50 Va. App. 142, 146 (2007) (en banc) (holding that the defendant's sufficiency argument was moot because its sole "premise—that the [BAC] results were admitted in error—[was] untrue").

### C. Expert Testimony (Assignment of Error 4)

Finally, Smith argues that the trial court abused its discretion by permitting Dr. Dalgleish's expert testimony about the effects of alcohol on the body after the court excluded the certificate of analysis showing Smith's actual BAC. "In a Virginia criminal proceeding, a qualified expert witness is allowed to testify if 'the subject matter is beyond the knowledge and experience of ordinary persons, such that the jury needs expert opinion in order to comprehend

the subject matter, form an intelligent opinion, and draw its conclusions.'" *Castillo v. Commonwealth*, 70 Va. App. 394, 439 (2019) (quoting Va. R. Evid. 2:702(a)(ii)). "[W]e review 'a trial court's decision to admit or exclude expert testimony under an abuse of discretion standard.'" *Arch Ins. Co. v. FVCbank*, ___ Va. ___, ___ (Dec. 29, 2022) (quoting *Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 575 (2011)).

Code § 18.2-266 does not require proof of the defendant's BAC to prove that he was driving while intoxicated. The statute makes it unlawful to drive a motor vehicle "(i) while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume" *or* "(ii) while such person is under the influence of alcohol." Code § 18.2-266. The amended indictment here charged those two grounds in the alternative. After the trial court excluded the certificate of analysis of the blood draw, however, the jury was instructed to determine simply whether Smith drove "under the influence of alcohol."

The trial court did not abuse its discretion in admitting Dr. Dalgleish's testimony about how intoxication affects a person's behavior.[6] Without evidence to show Smith's intoxication based on his BAC, the Commonwealth depended on the observations of Troopers Homlish and Swift, as well as on the dash-camera video. Dr. Dalgleish's testimony helped the jury understand how Smith's behavior reflected being under the influence of alcohol. For example, Dr. Dalgleish explained that the greater the level of alcohol in one's system, the more pronounced the "gaze nystagmus" effect—the "involuntary jerking of the eye," like a "dry wiper on a windshield," occurring when alcohol interrupts signals to the brain. That testimony was "beyond the knowledge and experience of ordinary persons," Va. R. Evid. 2:702(a)(ii), and it assisted the jury

---

[6] Although Smith also complains that the trial court did not perform the requisite balancing test, trial courts need not state factual findings or legal conclusions unless required by statute. *E.g.*, *Bowman v. Commonwealth*, 290 Va. 492, 500 n.8 (2015). "The trial court is presumed to know and correctly apply the law," absent contrary evidence. *Rainey v. Rainey*, 74 Va. App. 359, 377 (2022).

to understand that what the troopers observed during the field sobriety test—"involuntary jerking" of both of Smith's eyes—evidenced Smith's intoxication. So we cannot say that the trial court abused its discretion by permitting Dr. Dalgleish's testimony.

CONCLUSION

None of Smith's arguments warrants reversing his convictions.

*Affirmed.*